THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* RICHARD C. ROBINSON, Appellant.

Argued March 9, 1937; decided April 20, 1937.

*John W. Hollis* and *Alman W. Burrell* for appellant.

*Arthur G. Adams, District Attorney,* for respondent.

LEHMAN, J.   Prior to September, 1934, the defendant, as the managing partner of a firm consisting of his wife and himself, was engaged, in the city of Ithaca, with branch offices in other places, in the business of buying and selling securities on commission and for the account of his firm.   A client, Mrs. Juanita B. Bates, intrusted to him possession of certificates for 857 shares of stock which she had previously purchased upon the advice of the defendant and through the medium of the defendant's firm.   In August, 1934, she authorized the defendant to sell the stock.   Pursuant to her directions the stock was sold.   About that time the defendant organized a corporation to conduct the business previously carried on by the defendant's firm.   The proceeds of the sale of Mrs. Bates' stock were retained and used by the corporation in its business.   In October, 1935, the Attorney-General obtained a temporary injunction restraining the corporation from continuing business.   A receiver of the corporation was appointed.   Thereafter upon the complaint of Mrs. Bates the defendant was indicted upon a charge of larceny of her stock or of its proceeds.   At the trial of the indictment, he was convicted of larceny in the first degree.

The complaining witness testified that she directed the plaintiff to use the proceeds of the sale of her stock for the purchase of 540 shares of Empire Capital Corporation Class A stock. The defendant testified that the complaining witness authorized him to use the proceeds for the purchase of 41 shares of the preferred stock of the corporation which he was then forming to conduct his business. A certificate for 41 shares of such stock was filled out but never delivered to the complaining witness. The defendant claims that he retained the certificate in his possession at the request of the complaining witness and for her convenience. The complaining witness thereafter received each quarter a check for a dividend of $82 and gave a receipt for such dividends. The complaining witness testified that she believed that the checks represented dividends upon the Empire Capital Corporation stock which she claims she directed the defendant to purchase for her account. The testimony of the defendant, if accepted, would lead to the conclusion that the checks represented quarterly dividends of two per cent upon 41 shares of the preferred stock of the Robinson corporation, which issued the check, and that the complaining witness in giving receipts for the quarterly dividend checks for $82 was apprised of that fact.

Careful scrutiny of the record reveals some inconsistencies and improbabilities in the testimony both of the complaining witness and of the defendant. The jury had the task of searching out the truth, and the task in this case was certainly not easy. Its verdict of guilty is conclusive, if no errors at the trial tended to deprive the defendant of his right to a fair trial before an unbiased jury passing upon competent testimony. Without further analysis of the testimony, we, therefore, proceed to consider some of the alleged errors.

The defendant was called upon to meet the single charge of larceny of specific stock or its proceeds. It may be that at a trial in the city of Ithaca, the members of the jury may have known that the business of the defendant

in that city had been closed by a temporary injunction obtained by the Attorney-General of the State and that a receiver was in possession of the business. Probably, too, any effort to keep out of the record incidental allusions to these facts would have been a futile gesture; they were too closely connected with the complaint against the defendant. Nevertheless, allusion to such facts might tend to becloud the issue upon which the defendant had a right to be heard and prejudice the accused in his defense. He could not upon this trial present proof in vindication of the honesty of his general business career or in challenge of the justice of the order which resulted in closing his business; yet knowledge that he was charged by the State not merely with the specific crime for which he was on trial but also with a general course of dishonest practices and even crimes, would almost inevitably influence the judgment of the jurors in their consideration of the evidence of the guilt of the specific crime. In such circumstances it was the duty of the District Attorney, as well as the court, to be vigilant in excluding at the trial, so far as they could, all prejudicial reference to matters which were extraneous to the charge and which could not become the subject of inquiry at the trial.

Mrs. Bates, the complainant, was the first witness for the prosecution. On her direct examination she was asked whether she ever knew of the defendant's claim that she was the owner of R. C. Robinson Securities stock until she came into the office of the corporation " after it was closed." That reference to the closing of the office was perhaps not improper and may even have been necessary for the development of a connected story. The defendant's counsel made no objection to it and on cross-examination of the same witness, he himself asked the question, " You say you were down at Mr. Robinson's office after the office was closed?" and then followed up that question with other questions intended to bring out that at that time she had given to the receiver of the corporation a memorandum of her claim against the

defendant inconsistent with her complaint before the grand jury or her testimony at the trial. Incidentally, she voluntarily interjected a statement that " I think Mr. Shea was around there." Then the following questions were asked by the defendant's counsel and answered by the complaining witness: " Q. Was he employed by Mr. Robinson? A. No, sir. He was investigating things I guess. Q. When did you see Mr. Shea first? A. I did not talk with him but I later learned he was there. Q. When did you first talk with Mr. Abramson? A. When he came to my house and asked me to discuss the matter with him."

Thereafter the District Attorney called as witnesses Mr. John D. Shea, an accountant retained by the office of the Attorney-General to make an investigation of the affairs of the defendant's corporation, and Bernard Abramson, an attorney at law holding the position of senior securities accountant in the civil service of the State of New York and attached to the Department of Law, Bureau of Securities. Mr. Shea has, so far as appears, no personal knowledge concerning any matter relevant to the charge against the defendant. He was not questioned concerning such matters. He was questioned concerning the result of his investigation of the affairs of the corporation. He was asked: " Will you state what you discovered in reference to the books of the R. C. Robinson Corporation by this check-up?" and when objection to that question was sustained he was asked: " Can you point out any irregular thing you discovered?" These questions were patently improper. The trial judge sustained objections to all such questions and thus prevented the witness from giving some incompetent evidence, but he could not prevent the District Attorney from posing questions which suggested to the jury that the accountant was ready to point out " irregular things " discovered in his investigation; nor could the trial judge prevent the witness from injecting a statement that an injunction had been granted by the court, though

he struck out the statement upon the motion of the defendant.

The District Attorney defends the questions put and the answers elicited, on the plea that the cross-examination of Mrs. Bates by the defendant's attorney had opened wide the door for the admission of evidence concerning the closing of the defendant's business and the investigation of its affairs. We have set forth verbatim that part of the cross-examination upon which the District Attorney rests his contention. No analysis or argument is needed to show that it presents no justification for the introduction of the evidence which the District Attorney sought to elicit. The cross-examination by defendant's counsel referred to the closing of the office and the appointment of a receiver merely for the purpose of fixing the time and showing the nature of the statement of the complaining witness made to the receiver which tended to impeach her credibility. The questions were not calculated to elicit information as to the circumstances under which the office was closed and the receiver appointed or as to the result of the investigation of defendant's business. They did not in any manner open the door for the introduction of evidence on such extraneous matters. In the heat and excitement of a trial a District Attorney may easily be led by excess of zeal to ask questions which are incompetent. The fault may be slight and usually by correct rulings the trial judge can protect the accused from harm. Upon the examination of the witness Shea, the trial judge ruled correctly upon every objection and though he could not by his rulings give complete protection to the defendant, probably the defendant was not seriously prejudiced by questions asked or statements interjected upon that examination.

More serious harm resulted from the examination of the witness Abramson. As we have pointed out, he is an attorney, appointed senior securities accountant after passing a civil service examination and attached to the Department of Law. A jury might reasonably be

impressed by his qualifications and give weight to his opinions. He was asked: " Did you examine the books of the Robinson corporation] with reference to the Juanita B. Bates account?" To that question he gave the answer, " That was one of the various larcenies uncovered." Promptly the attorney for the defendant moved for a mistrial and to have the statement striken out. The trial judge refused to grant a mistrial, but stated: " Gentlemen of the jury, the answer not coming by reason of any question of the District Attorney, I shall instruct you gentlemen to disregard the statement made from the witness stand as to what the investigation revealed as an expression of opinion on his part only, and not evidence, and nothing with which you have anything to do, and that you confine your deliberations and thought with the questions that appear on the transaction of Mrs. Bates."

The Appellate Division found errors in the record but affirmed the judgment under section 542 of the Code of Criminal Procedure. In commenting on the statement volunteered by the witness Abramson, the court said: " These tactics are to be severely condemned on the part of a civil service employee of the State of New York, testifying in a court of justice, and especially when that particular witness happens to be an attorney and counselor at law." (249 App. Div. 913.) We agree with the Appellate Division in its criticism of the witness, and after study of the record we are constrained to the conclusion that the right of the defendant to a fair trial was so prejudiced that the failure of the trial judge to grant the motion for a mistrial constitutes error which cannot be disregarded under section 542.

An accused is entitled to a fair trial. Our rules of law are intended to guarantee to him that right and to afford him protection against its invasion. Invasion of that right by erroneous ruling of a trial judge may be corrected by appeal; invasion of the right by misconduct of an

attorney or witness or by the word or act of any other person, which does not constitute an error of law reviewable upon appeal, can be corrected only by motion for a mistrial. Ordinarily the granting or denial of the motion rests within the sound discretion of the judge to whom the motion is addressed. Presiding at the trial, hearing the statement of the witness upon which the claim of prejudice is based, he is in a better position to determine whether for the protection of the accused a halt should be called upon the pending trial and a new trial ordered. Denial of the motion constitutes no legal error unless it conclusively appears that the accused has been irretrievably prejudiced by what has occurred at the pending trial.

Certainly the rights of the defendant in this case have been irretrievably prejudiced if the jury was influenced by the statement of the witness that the matter for which the defendant was on trial was merely "one of the various larcenies uncovered" by the investigation made at the instance of the Attorney-General by the senior accountant attached to his staff. If the jury had been permitted to consider that testimony and had not been admonished to disregard it, the conclusion would be ineluctable that the jury would naturally be influenced by that statement. The decisive question in this case then is reduced to this: Can it be said reasonably that the admonition of the court removed the influence which otherwise the statement of the witness would naturally have had?

The incompetent questions put to the witness Shea concerning "irregularities" uncovered by Shea's "investigation" must have, at least, given to the jurors a suspicion that such irregularities existed even though the trial judge sustained objections to the questions. The minds of the jurors were thus prepared for the revelation that there were not only irregularities but "various larcenies uncovered." Admonition to disregard evidence which is stricken out is easy to give

and hard to follow. Judges trained by years of experience to base decision solely upon competent evidence contained in the record are not always completely confident of their ability to disregard and remain uninfluenced by information, or even impressions, conveyed to them *dehors* the record. The trial judge could not by admonition cause the jurors to forget what they had been told nor could he eradicate the impression that the defendant by objections was successfully excluding proof that the defendant habitually committed larceny. It is impossible to say that it did not influence the verdict.

We have said recently: " We must give to any defendant the right to be tried for the crime with which he is charged, and upon evidence proving or tending to prove that crime, uninfluenced by irrelevant facts and circumstances which tend to prejudice or mislead the jury. Issues must be left clear, not smothered or in a haze." (*People* v. *Posner*, 273 N. Y. 184, 190, opinion by CRANE, Ch. J.) Without fault of the trial judge, through the impulsive or perverse statement of a witness, the defendant has been deprived of the right which we have said we must give to any defendant. When that occurred there was no room for the exercise of discretion by the trial judge. In moving for a mistrial under these circumstances, the defendant was vindicating a right, not asking for a favor.

At the new trial the District Attorney will doubtless again offer in evidence the stub of check No. 2928 with its notation " 540 Empire." The notation is not a " record of any act, transaction, occurrence or event * * * made in the regular course of any business " which is admissible in evidence under section 374-a of the Civil Practice Act. If made by direction of the defendant or with his knowledge it would be persuasive evidence of guilt. If made without his knowledge it has no probative force. We need not now determine whether there is in this record any evidence that it was made by the defendant's direction. Doubtless upon a new trial that point will be made clearer.

The judgments should be reversed and a new trial ordered.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgments reversed, etc.