Chief Judge Desmond.
In November, 1943 defendant, then 13 years old, went to trial on an indictment charging him with murder in the first degree. After the trial had continued for several days and the People had rested their case, defendant withdrew his former plea of not guilty and was allowed to plead guilty to murder in the second degree. He received and is now serving a sentence of 30 years to life, and we are told that he will be eligible for parole in 1963. By this coram nobis proceeding (relief was denied him on two earlier applications but the grounds for relief therein were somewhat different), he prayed that the guilty plea and sentence be vacated. In Ms papers he demanded a hearing. The asserted basis for relief was an allegation that, because of his youth and epileptic condition and because of other factors, his guilty plea was not a voluntary or effective one and that, under all the circumstances, acceptance of the plea and sentencing thereunder deprived him of due process of law. The County Judge, denying appellant a trial, dismissed the petition, holding that mental and emotional capacity as of the time of the 1943 sentencing could not be tried out in a coram nobis proceeding. The court pointed out that before sentencing defendant had been examined by four psychiatrists, three of whom agreed that defendant was legally sane and one of whom expressed the opinion that the boy was not sane at the time of the alleged killing but was suffering a “ psycho motor epileptic attack ”. The three other physicians, during a pre-sentence conference with the sentencing Judge, had disputed the existence of epilepsy but the petition now before us shows a history of epileptic seizures of the grand mal type on a number of occasions over a period of several years after appellant's imprisonment.
The first question for us is as to whether the allegations of this petition state a case for coram nobis relief, at least to the extent of requiring a hearing. We think they do. Ordinarily coram nobis procedures cannot be used to correct errors appearing on the face of a record (see People v. Sadness, 300 N. Y. 69). However, there is an exception where there is a showing “ of a denial of due process requiring corrective judicial process ”. In such cases the scope will be expanded where the allegations of “ injury done to the defendant would deprive him of due *364 process of law ” (People v. Silverman, 3 N Y 2d 200, 202-203; and see People v. Hairston, 10 N Y 2d 92). The petition in the present case alleges that it was violative of due process to permit a 13-year-old boy to plead guilty to murder when there was before the court an opinion by a medical expert that the killing had taken place while defendant was in the throes of an epileptic rage or furor attack (see People v. Higgins, 5 N Y 2d 607). One of the physicians who rejected the diagnosis as to epilepsy admitted at the conference above referred to that all medical authorities are agreed that ‘ ‘ the individual who does anything during an epileptic equivalent, always forgets what he did.”
We held in People v. Hill (8 N Y 2d 935; see, also, People v. Boehm, 309 N. Y. 362) that under certain circumstances coram nobis could be used to litigate the question of whether defendant was insane at the time of trial even though psychiatrists appointed by the trial court had advised the court that defendant was sane. In the present case the record contains the stenographic transcript of the conference held by the County Judge after the People had put in their proof and rested and after defendant’s counsel, although stating his own opinion that the youth was “ mentally ill ”, had announced that it was the desire of the defendant to plead guilty to murder second degree. Presumably all the participants in that conference were sincerely trying to make the best of a difficult situation but their good intentions could not substitute for due process of law. The principal argument in favor of the guilty plea seemed to proceed from a fear expressed by the County Judge that defendant might be acquitted by the jury on the ground of insanity and be committed to a State mental hospital and might then be released shortly afterwards on a finding of sanity. There are signs that this apprehension may have diverted the attention of the conferees from their duty of providing a special measure of legal protection for this child.
Until the 1948 amendment to section 486 of the Penal Law, a defendant 13 years old could be prosecuted for murder (People v. Oliver, 1 N Y 2d 152). However, as Governor Dewey wrote in his message approving the amendment, it was a “ shocking thought ” that so young a child could under our statutes be electrocuted for murder and, as the Governor wrote. *365 the time was, in 1948, “ well overdue to state in the law in no uncertain terms that a child under the age of 15 has no criminal responsibility irrespective of the act involved.” Of course, that amendment is not applicable to this case. But in 1943, when the mere possibility of a conviction of a child for murder was shocking to contemplate, the taking of a guilty plea of murder from so young a defendant called for an extreme measure of caution and at least certainty of guilt and of the complete absence of any plausible defense. On a trial of the allegations of this petition, it might be found as fact that this defendant had such a defense and that insufficient consideration was given to it. Since that is so, there must be a hearing on those allegations (People v. Richetti, 302 N. Y. 290; and People v. Langan, 303 N. Y. 474).
The order should be reversed and the matter remitted to the County Court of Dutchess County for a trial of the allegations of the petition.