Ibwtn" D. Davidson, J.
The defendant, indicted for felonies relating to book-making, moves for an order suppressing the use on the trial of certain records, papers and documents seized by the arresting officers while engaged in an unlawful search of his home.
The facts which gave rise to the alleged unlawful search and seizure are as follows: In the morning of August 16, 1961, Police Officer Henschel received confidential information that a bookmaker was taking bets on telephone number Bit 9-8489. In seeking to place a bet over this phone, the officer failed to give the proper code words and was told he had the wrong number. When he hung up his coin was returned. Because of this the special investigator of the telephone company was alerted and he conducted an investigation. It was discovered that the telephone number, BE 9-8489, was connected improperly and unauthorizedly to LW 4-0765, both located in an apartment at 403 West Fortieth Street. This latter phone was in turn connected with a third telephone, TE 7-2826, traced to apartment 2 at No. 60 West 82nd Street.
Observing the action of the phones, it was learned that BE 9-8489, which was receiving an inordinate number of calls in a very short space of time, was connected to LW 4-0765 by a “cheesebox” device so that the incoming calls on BE 9-8489 were immediately switched over to LW 4-0765 and in turn relayed to TE 7-2826.
It was also learned that upon completing the conversation from a coin box phone booth to BE 9-8489, upon hanging up the receiver, the coins deposited in the phone coin receptacle would be returned.
The police, in company of the special agent of the telephone company, proceeded to 81st Street and Central Park West which was in the immediate neighborhood of the apartment building-located at No. 60 West 82nd Street. From a nearby phone booth Police Officer Henschel dialed BE 9-8489, used the appropriate code words, and placed á bet on a horse.- Upon completing his call"his-coin- was-returned. All-then proceeded to-apartment 2-of No." 60 West' 82nd" Street. While standing' outside the door, Police Officer Henschel overheard the defendant say certain things which he interpreted as the acceptance of bets on baseball games. Thereupon one of the group, a Police Deputy Inspector, *868 rapped sharply on the door and said “ open up ”. There being no response for several seconds, the police pushed in the door and entered the apartment. Inside the door and seated at á table, on which were many slips of paper, was the defendant wearing a telephone headset connected to TR 7-2826. Among the slips of papers which were seized by the arresting officers was the bet on the horse which Police Officer Henschel had phoned in from a nearby telephone booth, and also slips showing bets on the baseball games which Henschel had overhead while standing outside the door. Upon listening in on the headset which was still connected to TR 7-2826, the police heard persons calling in, seeking to place bets.
Accepting as truthful the testimony of the police officers and the special agent of the telephone company, it would seem that there was probable cause for the police to make an arrest of the defendant. The court recognizes that under the circumstances here disclosed, time being of the essence, the police were precluded from obtaining a search warrant prior to breaking into the apartment. However, the defendant urges that even though probable cause may exist to make an arrest without a warrant before breaking open the door to his residence, the police must comply with the law and announce their office and purpose. He claims that the arresting officers, having disregarded the law, his arrest was illegal, and the subsequent search of his apartment and the seizure of the articles in his apartment were unlawful.
Section 178 of the Code of Criminal Procedure, provides: ‘ ‘ To make an arrest, as provided in the last section, the officer may break open an outer or inner door or window of a building, if, after notice of his office and purpose, he be refused admittance.”
A careful reading of the record discloses that the arresting officers in fact failed to make known to the occupant of the apartment their official business, authority, or the purpose for which admission into the apartment was demanded. The peremptory command “ open up ” is no substitute for complying with the statutory requirements.
The District Attorney, with commendable candor, recognizes that the arresting officers failed to comply with the statutory duty before breaking into the apartment, and he states: ‘ ‘ A literal interpretation of the statute would make not only this arrest invalid but many others conforming even more closely to the statutory provisions! However, a literal interpretation is not compelled in every ease. ” .
'•.With this view the-court cannot agree. This requirement in our Penal Law should be strictly construed and strictly adhered *869 to to restrain overzealous police officers from whittling away a citizen’s right of privacy and unlawfully invading his home. A wholesome respect for law is what distinguishes our democratic society from the rule of expediency which obtains in totalitarian countries.
In a similar situation involving an arrest for gambling, the court, in Accarino v. United States (179 F. 2d 456, 465) stated: 1 ‘ Upon one topic there appears to be no dispute in the authorities. Before an officer can break open a door to a home, he must make known the cause of his demand for entry. There is no claim in the case at bar that the officers advised the suspect of the cause of their demand before they broke down the door. Upon that clear ground alone, the breaking of the door was unlawful, the presence of the officers in the apartment was unlawful, and so the arrest was unlawful. It follows that the search was unlawful and the evidence thus procured should have been suppressed.”
Similarly, the Supreme Court of the United States, in Miller v. United States (357 U. S. 301, 313-314), the court stated: “We are duly mindful of the reliance that society must place for achieving law and order upon the enforcing agencies of the criminal law. But insistence on observance by law officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of shortcut methods in law enforcement impairs its enduring effectiveness. The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. Congress, codifying a tradition embedded in Anglo-American law, has declared in § 3109 [U. S. Code, tit. 18] the reverence of the law for the individual’s right of privacy in his house. Every householder, the good and the bad, the guilty and the innocent, is entitled the protection designed to secure the common interest against unlawful invasion of the house. The petitioner could not be lawfully arrested in his home by officers breaking in without first giving him notice of their authority and purpose. Because the petitioner did not receive that notice before the officers broke the door to invade his home, the arrest was unlawful, and the evidence seized should have been suppressed.”
The criminal activities of the defendant did not endanger life or limb, nor did it involve violence or the threats of violence. In the absence of any exigent circumstances, the police were not *870 justified in unceremoniously crashing into the defendant’s apartment, arresting him and seizing all the papers* records and paraphernalia in sight.
Defendant’s motion to suppress the evidence is granted. Indictment dismissed.