**UNITED STATES of America ex rel. Alvin James JOHNSON, Petitioner,**

v.

**WARDEN OF RIKERS ISLAND PENITENTIARY, Respondent.**

United States District Court
S. D. New York.

April 14, 1965.

ployed by any employer, referred or classified for employment by any employment agency or labor organization, admitted to membership or classified by any labor organization, or admitted to, or employed in, any apprenticeship or other training program, in comparison with the total number or percentage of persons of such race, color, religion, sex, or national origin in any community, State, section, or other area, or in the available work force in any community, State, section, or other area."

Alvin James Johnson, pro se.

Frank D. O'Connor, Dist. Atty., Queens County, Kew Gardens, by Eugene Feldman, Asst. Dist. Atty., for respondent.

EDELSTEIN, District Judge.

This is an application for a writ of habeas corpus on the grounds that the applicant is being held in custody in violation of the Constitution of the United States. 28 U.S.C. § 2241(c)(3) (1959).

The applicant, who pleaded guilty to petty larceny, was arrested on March 13, 1964, by officers who had entered into an apartment in which he was sleeping. On a motion heard before Justice Livoti of the Queens County Supreme Court on May 25, 1964, to suppress evidence obtained as a result of that arrest, Detective Edward Kuroly, the transcript shows, testified in substance that:

1. He was the arresting officer;

2. He did not force his way into the apartment, but, rather, after identifying himself, was admitted by petitioner;

3. The door leading into the apartment was not damaged in any way;

4. Defendant was not arrested for violating his parole although he (Officer Kuroly) was aware that a warrant had been issued for petitioner's arrest for parole violation;

5. Parole Officer Grant was not with him at the time he entered the petitioner's premises;

6. Petitioner's brother, who had been arrested earlier that evening, had told him that he (petitioner's brother) and petitioner, had stolen a TV set and a phonograph which petitioner had thereafter helped to pawn;

7. Petitioner was arrested for participating in the crime of burglary, not for parole violation;

8. Petitioner's pockets were searched at the 114th Precinct station house and an incriminating pawn ticket was found upon him.

Justice Livoti ruled that there was probable cause to arrest and that the search of petitioner's pockets was incident to that arrest.[1]

Petitioner's counsel thereafter moved to reopen the hearing on the grounds of newly discovered evidence. On June 17, 1964, a new hearing was held before Justice Livoti in which Parole Officer Grant of the New York State Parole Commission testified in substance that:

1. He was petitioner's parole officer;

2. He had contacted New York City detectives to assist him in arresting the petitioner for parole violation;

3. At the time entry was gained into petitioner's apartment[2] he was accompanied by his partner (Parole Officer Maffucci), Detectives Boone and McAllister, and petitioner's brother. He did not recall whether Detective Kuroly was with them when petitioner's brother was questioned earlier that evening, but Detective Kuroly was not with them at the time they entered the apartment in which petitioner was sleeping;

4. At the apartment occupied by petitioner, Parole Officer Maffucci, Detective Boone, and petitioner's brother went to the front door, while he and Detective McAllister went to the rear door;

5. After returning from the rear of the premises he found the door open and walked in;

6. When he saw petitioner, petitioner was dressed "merely [in] his underwear. He was in bed;"

7. When he was ready to leave the apartment he found the door was stuck;

8. Petitioner was taken into custody as a parole violator under an arrest warrant which had been issued on January 20, 1964;

9. After petitioner was taken to the 114th Precinct station he was there questioned about other matters not related to the parole violation.

At the June 17, 1964, hearing, petitioner also called Curtis Talbert who testified that petitioner had been sharing his (Talbert's) apartment and that both he and petitioner had gone to bed after 12 o'clock, accompanied by two female companions. Talbert testified that:

1. After falling asleep he was awakened by knocking at the door;

2. "I got up out of bed, came to open the door. As soon as I got to the door, the door bust open;"

3. By breaking in, the officers smashed the door's lock, (which lock was shown to the court);

4. He had not opened the door for the officers, and the officers had not identified themselves before breaking in.

During the course of the hearing the witness identified Parole Officer Grant as the officer who had gone to one of the bedrooms and brought the petitioner out. The witness also testified that the detectives had difficulty leaving the building because the door was partly jammed.

Finally, petitioner called Parole Officer Maffucci, who stated that he and Officer Grant were searching for petitioner as a parole violator and that they had obtained entrance into the apartment based on the warrant. "We knocked and then we just pushed in the door." "We knocked a couple of minutes and waited and then pushed it." Testimony was also ad-

---

1. Testimony also was taken, at the same hearing, concerning the lawfulness of the arrest of petitioner's brother, James Johnson.

2. Although the apartment belonged to a Mr. Talbert, petitioner was sleeping there with Talbert's consent. Talbert testified that he had known petitioner for about seventeen or eighteen years and that pe-

titioner spent many nights there. The apartment may therefore be treated as petitioner's residence for the purpose of petitioner's standing to complain of the entry. Cf. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); United States v. Miguel, 340 F.2d 812, n. 2 (2d Cir. 1965). In any case, respondent has not raised this objection.

duced to the effect that although the arrest warrant for parole violation was dated January 20, 1964, petitioner was, in fact, still in Elmira Prison at that time and was not discharged on parole until January 30, 1964, (ten days after the warrant was dated). Parole Officer Grant, who was petitioner's parole officer, was unable to explain the discrepancy in the date but indicated that at the time the warrant was issued and at the time of the arrest he knew (of his own knowledge) that Johnson had been violating parole. There was additional testimony to the effect that in spite of the date on the warrant it was not obtained until after Parole Officer Grant learned of petitioner's parole violation subsequent to his release from Elmira Prison.

At the conclusion of the June 17, 1964, hearing, Judge Livoti ruled, in effect, that the warrant was valid for purposes of the arrest, and, implicitly, that the arrest was legal.[3]

Petitioner did not appeal from the judgment of conviction entered on his plea of guilty, although such an appeal is authorized in New York, N.Y. Code Crim. Proc. § 813–c, and he has not sought relief by a writ of error *coram nobis*. Respondent does not deny, however, that petitioner's time to appeal has expired and that therefore appeal is not an available state remedy within the meaning of 28 U.S.C. § 2254 (1959). Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Although traditionally the writ of error *coram nobis* is applicable only to errors not on the record, see People v. Sadness, 300 N.Y. 69, 73–74, 89 N.E.2d 188 (1949), it has been expanded by the New York courts when the interests of justice require. See People v. Huntley,

15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E. 2d 179 (1965); People v. Codarre, 10 N. Y.2d 361, 223 N.Y.S.2d 457, 179 N.E.2d 475 (1961); People v. Silverman, 3 N.Y. 2d 200, 165 N.Y.S.2d 11, 144 N.E.2d 10 (1957); People v. Sullivan, 3 N.Y.2d 196, 165 N.Y.S.2d 6, 144 N.E.2d 6 (1957). *Compare* People v. Sadness, supra, *with* People v. Robertson, 12 N.Y.2d 355, 239 N.Y.S.2d 673, 190 N.E.2d 19 (1963). Thus the Second Circuit has ruled that "a state prisoner must seek a writ *coram nobis*," United States ex rel. Emerick v. Denno, 328 F.2d 309, 310 (2d Cir. 1964), before seeking relief by federal habeas corpus. 28 U.S.C. § 2254 (1959); see Fay v. Noia, supra, 372 U.S. at 418–420, 83 S.Ct. 822. Subsequent to Emerick, however, the Supreme Court, in Jackson v. Denno, 378 U.S. 368 n. 1, 84 S.Ct. 1774, n. 1, 12 L.Ed.2d 908 n. 1, (1964), analogized the requirement of exhaustion to the knowing waiver of a constitutionly protected right, a criteria set forth in Fay v. Noia, supra, 372 U.S. at 438–440, 83 S.Ct. 822, for denying habeas corpus even where there was *no* presently available state remedy. The applicant, in Jackson, had not questioned in the state courts the constitutionality of New York's procedure for determining the voluntariness of a confession. He had, however, given the state courts an opportunity to rule on whether the confession was in fact voluntary. Therefore, in United States ex rel. Ortiz v. Wallack, 237 F.Supp. 854 (S.D.N.Y. 1965), this court reasoned that footnote 1 to Jackson v. Denno was not applicable where a petitioner had completely failed to give the state courts an opportunity to pass on his underlying factual allegations. United States ex rel. Krzywosz v. Wilkins, 336 F.2d 509, 511 (2d

---

**3.** It is undisputed that the officers in this case had no search warrant. A search incident to a lawful arrest must be more narrowly restricted than a search pursuant to a search warrant. United States v. Ventresca, 85 S.Ct. 741, 743–746 (U.S. March 1, 1965); see Jones v. United States, supra note 2.

The disposition of this case makes it unnecessary to consider, taking the testimony most favorable to the accused, whether the search at the police station several hours after petitioner's arrest for a parole violation was "incident" to that arrest. See e. g., Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777 (1964); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L. Ed. 145 (1925).

Cir. 1964), decided by the Second Circuit almost three months after Jackson is consistent with such an interpretation. Cf. United States ex rel. Weber v. Fay, 2d Cir., 343 F.2d 710, April 6, 1965. In the instant case petitioner has given the trial court an opportunity to pass on his factual allegations but has not given the state appellate courts such an opportunity. Although a state prisoner applying for federal habeas corpus is no longer required first to petition for certiorari, Fay v. Noia, supra, 372 U.S. at 435–438, 83 S.Ct. 822, he is still required to seek relief from all of the appropriate state tribunals. See id.; 28 U.S.C. § 2254 (1959). Thus, under this court's construction of footnote 1 to Jackson v. Denno, petitioner has failed to exhaust his presently available state remedies.[4]

Remitting petitioner to the state courts is a result also compelled by considerations of policy. Assuming *arguendo* that there was probable cause to arrest (either in connection with the burglary or the parole violation), see e. g., Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L. Ed.2d 142 (1965); Ker v. State of California, 374 U.S. 23, 34–37, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States ex rel. Lupo v. Fay, 332 F.2d 1020 (2d Cir. 1964), or a warrant sufficient on its face to justify an arrest, the principal question raised by this application is whether the procedure followed by the officers, when they entered petitioner's place of occupancy, was constitutionally permissible. In Ker v. State of California, supra, eight members of the Court agreed to apply the Fourth Amendment's protection against unreasonable searches and seizure to the states through the Fourteenth Amendment. Four of the Justices found that the Ker case entry, executed by use of a key obtained from a building manager, and without any announcement of purpose or identity, was constitutionally permissible. Four Justices, in dissent, reasoned that in the absence of a knock at the door and some

activity by the occupants which would justify the officers in believing that evidence was being destroyed, the entry was unconstitutional. Subsequent cases provide little guidance in deciding whether prolonged silence (after a repeated knock on the door) authorizes an officer to break into premises without first making the appropriate announcement. See United States v. Barone, 330 F.2d 543 (2d Cir.), cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964) (screams in the dead of night—dicta); Davis v. United States, 327 F.2d 301 (9th Cir. 1964) (eight year old daughter admitted police); cf. Munoz v. United States, 325 F. 2d 23 (9th Cir. 1963) (federal statute violated by entry simultaneous with announcement); United States v. Nicholas, 319 F.2d 697 (2d Cir.), cert. denied, 375 U.S. 933, 84 S.Ct. 337, 11 L.Ed.2d 265 (1963) (door opened by common-law wife who threw herself on narcotics agent and screamed "police," held an announcement would have been a useless gesture). See generally Benson v. People of State of California, 336 F.2d 791 (9th Cir. 1964), petition for cert. filed, 85 S.Ct. 1086 (U. S. Feb. 3, 1965). Prior to Ker a divided D.C. Circuit declined to decide this question when it was presented in a federal statutory context, Wayne v. United States, 115 U.S.App.D.C. 234, 318 F.2d 205, cert. denied, 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963). Thus the permissibility of the procedure allegedly followed in the instant case appears to be a constitutional issue not yet clearly resolved. See Blakey, The Rule of Announcement and Unlawful Entry, 112 U. Pa.L.Rev. 499 (1964).

■ If it is possible to decide a case on other grounds, the resolution of constitutional questions should be avoided, e. g., Boynton v. Com. of Virginia, 364 U.S. 454, 81 S.Ct. 182, 5 L.Ed.2d 206 (1960); Peters v. Hobby, 349 U.S. 331, 337–338, 75 S.Ct. 790, 99 L.Ed. 1129 (1955); Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 345–348, 56 S.

4. New York state habeas corpus, Civil Practice Law and Rules (C.P.L.R.) § 7002, normally returnable in the county where petitioner is detained, see C.P.L.R. § 7004(c), may also be a presently available state remedy.

Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Moreover, state law controls the validity of an arrest, unless that law fails to meet constitutional standards. See, e. g., Ker v. State of California, supra, 374 U.S. at 37, 62, 83 S.Ct. 1623; United States ex rel. Lupo v. Fay, 332 F. 2d 1020, 1022 (2d Cir. 1964) ; cf. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). The New York Code of Criminal Procedure, § 175, requires that an arresting officer give "notice of his authority and purpose" before breaking into a dwelling to execute an arrest warrant. Similarly, an officer making an arrest based on probable cause is required to give "notice of his office and purpose" before breaking in. N.Y. Code Crim.Proc. § 178. The lower New York courts have formulated exceptions to these requirements where the accused is about to escape, destroy evidence, or endanger the safety of the arresting officer or of some other person within the building. See People v. Cocchiara, 31 Misc.2d 495, 499–502, 221 N.Y.S.2d 856 (N.Y.County Ct. 1961) ; cf. People v. Montanaro, 34 Misc.2d 624, 630, 229 N.Y. S.2d 677 (Kings County Ct. 1962) (dicta).[5]

In the instant case, however, there does not seem to be any indication in the record of danger to the officers, imminence of escape, or destruction of evidence. Thus it appears that the judicially created exceptions would not be applicable, see People v. Goldfarb, 34 Misc.2d 866, 229 N.Y.S.2d 620 (N.Y. County Ct. 1962) (sharp rapping on the door followed by the words "open up" held insufficient to satisfy New York's statutory requirement of notice.) Petitioner's rights may thus be protected without the necessity of deciding the constitutionality of the procedures followed by the arresting officers.

The application is denied " 'without prejudice to a renewal of the same,' " Fay v. Noia, supra, 372 U.S. at 419, 83 S.Ct. at 838 if the New York courts fail to protect the applicant's constitutional rights.[6]

Application denied.

5. Involving a search warrant, the Montanaro case anticipated, in part, the "no knock" law subsequently enacted by the New York legislature. N.Y.Laws 1964 Ch. 85, March 2, 1964, effective July 1, 1964. This statute relates only to the execution of search warrants under N.Y. Code Crim.Proc. § 799 but not to arrests either with or without warrants, N.Y.Code Crim.P. §§ 175, 178.

6. The disposition of this case makes it unnecessary to decide the substantive issue of whether petitioner has, by his plea of guilty, waived the defects alleged in this petition, see United States ex rel. Boucher v. Reincke, 341 F.2d 977, 980 (2d Cir. 1965), ("[b]y pleading guilty he admitted all the facts alleged in the information and waived all non-jurisdictional defects and defenses,") relying on United States v. Spada, 331 F.2d 995 (2d Cir. 1964) (dicta) ; Hoffman v. United States, 327 F.2d 489, 490 (9th Cir. 1964) (dicta) ; United States v. Miller, 293 F.2d 697 (2d Cir. 1961) (alternative holding) ; United States v. Parrino, 212 F.2d 919 (2d Cir.), cert. denied, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954) (inapposite). Similarly it need not be decided whether the allegedly unlawful conduct of the arresting officers constituted a "jurisdictional defect," see Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1938) (by denying constitutional rights a tribunal may lose "jurisdiction * * * 'in the course of the proceedings' * * * *"), or whether the petitioner's plea of guilty was so tainted by the prior allegedly illegal arrest and the impending introduction against him of the fruits of that arrest, that the plea of guilty should be deemed involuntary. Cf. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (confession so tainted by prior illegal arrest that due process required its suppression).