UNITED STATES of America ex rel.
Fred FLOYD, Petitioner-Appellee,

v.

Walter H. WILKINS, as Warden of Attica State Prison, Attica, New York, Respondent-Appellant.

No. 199, Docket 30016.

United States Court of Appeals Second Circuit.

Argued Jan. 5, 1966.

Decided Sept. 20, 1966.

---

Moore, Circuit Judge, dissented.

Benjamin H. Siff, New York City (Herbert H. Hirschhorn, New York City, on the brief), for petitioner-appellee.

Barry Mahoney, Asst. Atty. Gen. of New York (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., and Brenda Soloff, Deputy Asst. Atty. Gen., on the brief), for respondent-appellant.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Respondent, Warden of Attica State Prison, appeals from an order and judgment of the United States District Court for the Western District of New York, Harold P. Burke, Chief Judge, sustaining a writ of habeas corpus by state prisoner, and directing new trial within a reasonable time. We find no error and affirm the judgment.

Petitioner was convicted in 1962 in Bronx County Court for the 1952 felony murder of Samuel Cohen, a grocer, and upon the jury's recommendation for mercy, received a life sentence. The Court of Appeals affirmed, and on motion to reargue Floyd presented for the first time a Federal Constitutional question, under the Sixth Amendment. Leave to reargue was denied.

On the trial of Floyd and his co-defendant Herrmann a confession of the latter was introduced, naming Floyd, at the time of the crime an ill-educated boy of 16, as an accomplice. There was no objection, or attempt to obtain a severance. Petitioner's counsel only asked that the jury be instructed that the confession was not binding on Floyd, and this was done. The evidence against Floyd, who did not put on a defense, consisted mainly of statements by Floyd to officials that he accompanied Herrmann, the codefendant, who was 21 at the time, to the grocery store where the crime was committed, and remained outside while Herrmann entered; virtually the only other evidence was the dying declaration of

Cohen that "two white boys" shot him. When making the statements, Floyd was not advised of his right to remain silent, his right to counsel, or that his answers could be used against him. He did not ask for an attorney.

Herrmann confessed to the 9 year old crime in 1961, and implicated Floyd. Floyd made a statement to a detective then. About a month later he was picked up at about 3:00 in the morning and made an oral statement about 6:00 a. m. That afternoon he made a statement to the Assistant District Attorney, of which a stenographic record was made. In these statements, all of which were introduced on trial, Floyd denied there was any conversation between himself and Herrmann concerning any robbery prior to the crime, and claimed that he merely went along with Herrmann for an afternoon train ride.

The prosecutor's theory was that Floyd was a lookout. In summation the prosecutor observed that in Herrmann's confession he said "that the robbery had been in the Bronx and that Floyd was with him when he went into the grocery store to hold up the grocer." Floyd's counsel made no objection to the summation. In the charge the trial judge noted that Herrmann had said he had an accomplice, whom the court styled "another party whom he named," or "the other person," and referred to Floyd's statements as confessions.

Floyd's petition to the District Court was based on two grounds, first, a violation of the Sixth Amendment right to confront witnesses,[1] for the failure of the Trial Court to redact Herrmann's confession so as to delete references to Floyd; and second, a violation of the right to counsel and the resultant improper admission of the statements made by him. The District Court did not consider separately the right to counsel point, and relied instead primarily on the deletion issue, noting also the paucity of evidence against Floyd and the reference

---

1. "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." U.S.Const. Amdt. VI.

by the Trial Court to Floyd's statement as a confession.[2]

The District Court was justified on the record in finding that this conviction was lacking in that fundamental fairness in criminal procedure enjoined upon the states by the due process clause of the Fourteenth Amendment of the Constitution of the United States. The use in evidence of Herrmann's confessions without deletion of the portions accusing Floyd, when Herrmann did not take the stand so that he might be cross-examined, and the dissipation of any possible curative effect of the limiting instruction by the remarks of the prosecutor in summation and the trial judge in his charge, made a fair consideration by the jury of Floyd's guilt or innocence on evidence properly admissible against him quite impossible. Moreover, the evidence properly admissible against Floyd was slight. Judge Van Voorhis, dissenting in the New York Court of Appeals, would have reversed for insufficiency of evidence to convict.

The state argues that state remedies are not exhausted, since a Huntley hearing, People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965) is available on the question of the use of Floyd's admissions. But a Huntley hearing is a method of determining the voluntary character of confessions, not the essential unfairness of a lack of confrontation through use of out of court statements by a co-defendant who does not take the stand. It is unlikely that Floyd could obtain such a hearing or that it would reach the questions he raised here. Nor is *coram nobis* available on these issues since defendant had counsel at the trial. People v. Howard, 12 N.Y. 2d 65, 236 N.Y.S.2d 39, 187 N.E.2d 113 (1962).

The state also contends that there was a waiver. But New York's rule on confrontation developed subsequent to Floyd's trial in February 1962. People v. Vitagliano, 15 N.Y.2d 360, 258 N.Y.S.

2d 839, 206 N.E.2d 864 (1965), People v. Robinson, 16 A.D.2d 184, 224 N.Y.S.2d 705 (4th Dept. Feb. 22, 1962). There can be no waiver of a right not known to exist, for there can then be no "considered choice" required by Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

And of course the direct holding by the Supreme Court that the right to confrontation given by the Sixth Amendment is applied to the states by the Fourteenth, Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), came after the state court trial. Judge Burke did not reach the question of whether Pointer v. State of Texas was to be given retroactive effect so that the lack of confrontation alone required a new trial under the Sixth Amendment as applied to the states by the Fourteenth.

It would appear from Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) that the right to confrontation required of the states by Pointer v. State of Texas will be applied retroactively for, while "we must determine retroactivity 'in each case' by looking to the peculiar traits of the specific 'rule in question,'" an important factor is whether the rule "guard[s] against the possibility of unreliable statements." Cf. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Tehan, Sheriff v. U. S. ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), may be said to focus primarily on procedural devices to insure knowledge of rights, *Linkletter* unreasonable search, *Tehan* on comment on assertion of rights, and are held not retroactive. Pointer v. State of Texas dealing with the right of confrontation on the other hand focuses directly on the opportunity to test the reliability of statements such as the out of court state-

---

2. In view of Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) the second of Floyd's two grounds must fail.

ments of Herrmann, used here with no opportunity of confrontation.

Moreover, the implication is plain in Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966), that while *Escobedo* and *Miranda* are not retroactive, denials of the rights that they guarantee for the future are factors to which weight may be given in determining the overall question of whether coercion existed in prior cases. So here, in determining the overall question of whether the trial was essentially unfair, Judge Burke rightly gave weight to the right of confrontation recognized by Pointer v. State of Texas. Justices Harlan and Stewart, concurring in the result in Pointer, were in no doubt that the right of confrontation was " 'implicit in the concept of ordered liberty,' Palko v. [State of] Connecticut, 302 U.S. 319, 325 [58 S.Ct. 149, 152, 82 L.Ed. 288], reflected in the Due Process Clause of the Fourteenth Amendment independently of the Sixth." (Mr. Justice Harlan, concurring in the result, 380 U.S. at 408, 85 S.Ct. at 1070.) We cannot find any waiver of the right to fair trial on the part of Floyd in the circumstances here, nor any fault in Judge Burke's determination that lack of confrontation, together with the other circumstances here, amounted to lack of Fourteenth Amendment due process.[3]

In Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), relied on by the respondent, use of a co-defendant's confession without deletion, but with precautionary instructions, was held permissible under the circumstances. There, however, deletion would have been difficult, the trial was simple, there was other massive evidence against petitioner and the separate interest of each defendant was emphasized. Here, deletion would not have been difficult, other evidence against Floyd was slight, and the remarks of prosecutor and trial judge effectively dissipated any effect of the cautionary instructions. It

would have been easy to avoid the problem by trying the two defendants separately, and we think that due process in a joint trial forbade the practice followed here.

The suggestion by the warden that Floyd's counsel deliberately, as a matter of trial strategy, permitted the joint trial, so as to present Floyd as the "immature victim of circumstances" in contrast to Herrmann, the "real culprit," is unconvincing. Furthermore, the doctrine of being bound by counsel's strategy, see Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) is a species of waiver, and depends on a known right. But at the time of trial, Stein v. People of State of New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953), later overruled in *Pointer*, appeared to represent Federal Constitutional law, and New York law on confrontation had not developed, so that it cannot be said that there was then a known right to deletion.

The judgment is affirmed.

MOORE, Circuit Judge (dissenting):

This case presents a number of perplexing problems which constantly arise in the field of criminal law. After a trial and jury verdict and a review by the distinguished appellate courts of the State of New York, the defendant then on trial, Fred Floyd, the petitioner here, obtains what amounts to a trial *de novo* not by a jury but by a single judge. By the habeas corpus procedure, the federal judge can relive the State trial, weigh the evidence, redetermine the trial tactics which, in the light of the record and the adverse result, defense counsel should have adopted, mentally make and sustain objections—in short, make of the judicial process a game not dissimilar to duplicate bridge. This process is supported—and justifiably so—on the theory that rights (not always in existence except to the proper Blackstonian until after the decision) of constitutional dimen-

---

3. " * * * nor shall any State deprive any person of life, liberty, or property, without due process of law * * *." U. S.Const. Amdt. XIV, Sec. 1.

sion (a comparatively new term meaning important enough in the collective mind of the court to justify the decision) have been invaded. In practically every case where it has been determined that there has been such an invasion, there is usually an extreme state of facts from which the conclusion can be drawn that the defendant has not had a fair trial. But fairness is measured not by compliance with the rules in effect and used at the time the game is being played, but by rules which, the reviewing court believes, should have been used.

At the time of the trial of this particular case, jointly indicted defendants could, in the discretion of the court, be jointly tried. N.Y.Code Crim.Proc. § 391. Motions to sever were permitted; granting also was discretionary. No objection to joinder or motion to sever was made. For the trial court's guidance, the law as stated by the Supreme Court in Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1959) was available. Even then, the irreconcilable conflict between the assumption that a jury will follow the court's instructions and the "naive assumption that prejudicial effects can be overcome by instructions to the jury" (Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790) existed; and the danger that "the trial judge could not by admonition cause the jurors to forget what they had been told * * *" (People v. Robinson, 273 N.Y. 438, 446, 8 N.E. 2d 25, 28) is ever present in every multi-defendant criminal case.

In theory, at least, the federal courts on habeas review should not redetermine for the State trial judge whether there was enough evidence to be submitted to the jury. Nor should they now substitute their discretion as to how the judge should have conducted the trial unless that conduct clearly produced a violation of a protective right bestowed by the United States Constitution.

The State trial judge properly conducted the trial in accordance with all the accepted rules. He permitted Floyd's counsel to decide upon and to execute his strategy of defense without appointing himself, in effect, as Floyd's counsel. It requires little knowledge of the trial arena to visualize that strategy. The transcript makes it clear. Floyd, an uneducated 16-year old boy, dominated and glamorized by the 21-year old Herrmann, innocently accompanied Herrmann on the fatal expedition. Counsel's position by objection, failure to object and defense summation were all geared to this presentation and jury appeal. The judge in his charge gave this theory full scope by charging that they could find first or second degree murder, manslaughter or, of course, not guilty. For the supporters of the jury system in criminal cases, the verdict of guilty of first degree murder should be dispositive, harsh and unjustified though it has seemed to Judges Van Voorhis, Burke and my two colleagues here, to whose views in that respect I add my own concurrence. Again, in theory, the jury verdict should stand unless we are to say that Floyd's case can be conveniently fitted into one or more of the current categories calling for a new trial, namely, lack of counsel at the time of statement and/or deprivation of a constitutional right.

As to lack of counsel when the statement was given virtually at the time of apprehension, it would indeed be difficult to reconcile a decision that this was a fatal defect with our recent decisions in *Indiviglio, Robinson, Cone* and *Drummond.*[1] The statements were intended to

---

1. United States v. Indiviglio, 352 F.2d 276 (2 Cir., 1965) ; United States v. Robinson, 354 F.2d 109 (2 Cir., 1965) ; United States v. Cone, 354 F.2d 119 (2 Cir., 1965) ; United States v. Drummond, 354 F.2d 132 (2 Cir., 1965).

In fact, the majority now concede that "In view of Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.

Ed.2d 882 (1966) the second of Floyd's two grounds ['second, a violation of the right to counsel and the resultant improper admission of the statements made by him.'] must fail." See fn. 2. Therefore, they rely upon the first ground "first, a violation of the Sixth Amendment right to confront witnesses, for the failure of the Trial Court to redact Herrmann's con-

be exculpatory and in Floyd's mind they were. Furthermore, their use or exclusion was somewhat discretionary, depending upon the value they might have had in the opinion of Floyd's counsel.

In my opinion, the only real problem here centers around the use of Herrmann's confession against Floyd. The trial judge carefully followed the accepted cautionary procedure by instructing the jury that it was not binding on Floyd, thus bringing up the age-old question: can the jury ever dispel from its mind that which it has heard? This fiction has become—and, if there is to be a trial based upon witness testimony, will remain—an established necessity. Many an answer or a remark by a witness not relevant according to the rules but often quite prejudicial is disposed of during a trial by the ruling "Strike the answer: the jury is instructed to disregard it." In the multi-defendant trial, the prosecution quite frequently depends upon the confession of a co-defendant to secure his conviction. The statement, however, relates to the events of a crime in which there may have been many participants. As soon as this hypothetical defendant,

X, says, "I went to the bank with A, B and C," A, B and C are implicated. The judge, following accepted practice, will say that the statement or confession will be received only against X, and is not to be considered as binding on A, B and C. But can a jury ever disregard it?

What could the trial judge here have done that he did not do? He could scarcely have substituted an "X" for Floyd with any degree of effectiveness. The jury would have immediately known who "X" was. He did say in his charge "with another" but it was clear who the "another" was. He could not have rewritten Herrmann's statement to read "I went on my robbery expedition alone and unaccompanied by anyone." In sum, at this juncture there was in retrospect only one solution—severance and individual trials. However, no such motion was made by Floyd's counsel and, if summoned to the bench and urged by the court to make it, counsel might well have refused on the theory that only by being kept in the case with Herrmann could the contrasting degrees of guilt or innocence of his client be placed before the jury.

fession so as to delete references to Floyd." However, Johnson v. State of New Jersey, supra, must have specifically considered this question because the defendants there under sentence of death argued prejudice because their confessions were received in evidence in their joint trial, one of their points bearing the heading

"Where Motions for Severance Are Denied, and Three Defendants are Tried Jointly, and the Confessions of Each, Expressly Implicating the Others, Are Admitted into Evidence over Objection, and Where Two of the Confessions Given by One of the Defendants Are Held to be Coerced, Justice Requires that the Other Defendants be Granted a New Trial Free from the Prejudicial Effect of the Coerced Confessions."

The Supreme Court of New Jersey had concluded that separate trials would have created almost insurmountable problems of administration; that the trial judge gave proper instructions that the confession of one defendant was not binding on the other; and that there was no abuse of discretion in denying the severance. State v. Johnson, 31 N.J. 489, 158 A.2d 11 (1960). In the Supreme Court, petition-

ers argued that "it is a legal fiction to believe that the jury in this case was able to separate the confessions of each of these defendants and compartmentalize them," and referred to People v. Aranda, 63 Cal.2d 518, 47 Cal.Rptr. 353, 407 P. 2d 265 (1965, Traynor, C. J.) criticizing joint trials. They stressed the dissent of Mr. Justice Frankfurter (writing for four members of the Court) in Delli Paoli wherein he expressed the opinion that jurors cannot by instructions to disregard erase from their minds that which they have heard. The Supreme Court, however, affirmed the convictions and disposed of these arguments by saying: "Petitioners challenge the validity of their convictions on several other grounds, all of which we have examined with great care, including the claim that their confessions were coerced. We conclude without unnecessary discussion that those grounds which may be tested on this direct review of the judgment of the New Jersey Supreme Court are without merit." If these arguments be "without merit" in a capital case, they do not support reversible error here. See also United States v. Bozza, 365 F.2d 206 (2d Cir. 1966).

The danger of the prejudicial effect on the implicated co-defendant is so real that a procedure might well be developed requiring a prosecutor to reveal in advance of trial his intention to use a co-defendant's confession and to give defense counsel under the court's supervision an opportunity to satisfy himself in advance that appropriate deletions would be made so as to eliminate any contaminating effect the confession might have on his client or, in the alternative, if deletion proved impracticable, to obtain a separate trial.

Since there is no legal error to be found, reliance must be placed on other factors. A first degree murder conviction and a life sentence seems harsh for a 16-year old boy who merely went along for an afternoon's ride on an elevated train. To be sure, this was not the jury's conclusion, but its conclusion might well have been based upon the Herrmann confession with its Floyd implication. Had Floyd's counsel had the opportunity to confront Herrmann, he might have been able to develop enough doubt as to Floyd's actual participation to have brought about a conviction on a lesser charge, if not an acquittal. But here again, there was no denial of this right. Herrmann was in the courtroom within a few feet of Floyd's counsel and no attempt was made to call him. Herrmann did not refuse to testify on Floyd's behalf nor, after being called (which he was not), did he claim his privilege to remain silent.

The trial judge in this habeas proceeding based his granting of the writ upon the "total effect" of Herrmann's confession, the court's failure to "edit" it, reference to Floyd's statements as "confessions" and comments in summation which, in his opinion, deprived Floyd of a fair trial.

We have recently held in a series of cases—and with proper deference to the courts of New York which must be assumed to have as high a standard of fundamental fairness as the federal courts and which have expressed themselves as willing to heed any "denial of due process requiring corrective judicial process" (People v. Codarre, 10 N.Y.2d 361, 363, 223 N.Y.S.2d 457, 458, 179 N.E.2d 475, 476 (1961))—that where the issues presented have not been squarely tested by appropriate proceedings in the State courts, we would refrain from taking action until the defendant was able to establish that a State remedy was not available by which he could raise the issues now presented to the federal courts. I cannot accept as a foregone conclusion that New York will summarily reject Floyd's claim that he was deprived of his right to counsel and to confrontation, if there be merit to the claim. Federal courts should not try to anticipate what State courts will or will not do in this changing judicial climate—at least until the State courts have had an opportunity to act. The majority refer to People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), as if it pre-empted the entire field of possible State court action. Merely because *Huntley* happened to deal with the voluntariness of confessions does not restrict the New York Court of Appeals from examining into and correcting fundamental unfairness wherever it is found to exist as that Court said in *Codarre,* supra. It is certainly premature at this time for a federal court to say that it is "unlikely" that the New York courts will not give the same consideration to the points in issue as the majority here.

Therefore, I would follow our decisions in United States ex rel. Bagley v. LaVallee, 332 F.2d 890 (2 Cir., 1964) ("if there were some doubt as to the availability of relief in the New York courts, we still would give its courts the first chance to review their alleged errors so long as they have not authoritatively shown that no further relief is available"); United States ex rel. Wynn v. Wilkins, 342 F.2d 777 (2 Cir., 1965); United States ex rel. Martin v. McMann, 348 F.2d 896 (2 Cir., 1965); United States ex rel. Boodie v. Herold, 349 F.2d 372 (2 Cir., 1965); and reverse with in-

structions to deny the petition without prejudice to reinstatement or renewal after relief has been sought in the New York courts.