W. Vincent Grady, J.
This is petitioner’s third application for coram nobis relief. In his two prior applications he claimed : (1) that he was insane at the time of the commission of the offense, at the time of the plea of guilty and at the time of sentencing ; (2) that he was not adequately represented by counsel; and (3) that by reason of his illness — epilepsy — and his extreme youth he was incompetent to plead guilty. Both applications were denied without a hearing by this court and each denial was affirmed by the Appellate Division from whose determinations no appeal was taken. (People v. Codarre, 206 Misc. 950, affd. 285 App. Div. 1087, 8 Misc 2d 145, affd. 5 AD 2d 1016.)
*446 Commenting upon petitioner’s claim of insanity the Appellate Division stated (285 App. Div. 1087): “In our opinion, under the facts presented by this record, the remedy of coram nobis is unavailable to raise the question of defendant’s insanity at the time of his plea and sentence. The question of his sanity was before the court during the trial and at the time the plea was accepted and it could have been raised upon his arraignment for judgment. (Code Crim. Pro., § 481.) The writ of error coram nobis may not be invoked under such circumstances. (Cf. People v. Sadness, 300 N. Y. 69, 73-74; People v. Palumbo, 282 App. Div. 1059; People v. Flora, 281 App. Div. 946, affd. 306 N. Y. 615, and Blodgett v. State, 245 S. W. 2d 839).”
Under the present application, the petitioner seeks under coram nobis an order granting him a hearing on the question of whether “ a state procedure which permits a plea of guilty to murder in any degree by an epileptic 13-year-old violates the due process clause of the Fourteenth Amendment of the United States Constitution ”.
The People through the District Attorney of Dutchess County oppose the application on the ground that defendant was not deprived of the due process guaranteed by the Fourteenth Amendment of the Constitution.
The incumbent Dutchess County Judge John E. Schwartz disqualified himself by reason of the fact that he was District Attorney of Dutchess County during the prosecution of defendant and certified this matter to the Surrogate pursuant to section 73-a of the Civil Practice Act and section 44 of the Code of Criminal Procedure (now authorized by Appellate Division order under court reorganization).
This court on September 30, 1960 (24 Misc 2d 902), denied appellant’s petition in all respects based on the previous ruling of the Appellate Division on the unavailability of the question of mental and emotional capacity in a coram nobis proceeding.
After the lower court’s decision was affirmed by the Appellate Division (13 A D 2d 684) the matter was then taken to the New York State Court of Appeals and the order of the County Court was reversed and the matter remitted to it for a trial of the allegations of the petition. (10 N Y 2d 361.) Chief Judge Desmond speaking for the majority of the Court of Appeals stated (pp. 363-364): ‘ ‘ The first question for us is as to whether the allegations of this petition state a case for coram nobis relief, at least to the extent of requiring a hearing. We think they do. Ordinarily coram nobis procedures cannot be used to correct errors appearing on the face of a record (see People v. Sadness, 300 N. Y. 69). However, there is an exception where there is *447 a showing ‘ of a denial of due process requiring corrective judicial process ’. In such cases the scope will he expanded where the allegations of ‘ injury done to the defendant would deprive him of due process of law ’ (People v. Silverman, 3 N Y 2d 200, 202-203; and see People v. Hairston, 10 N Y 2d 92).”
The learned court further stated (p. 365): “ On a trial of the allegations of this petition, it might be found as fact that this defendant had such a defense and that insufficient consideration was given to it. Since that is so, there must be a hearing on those allegations (People v. Richetti, 302 N. Y. 290; People v. Langan, 303 N. Y. 474). The order should be reversed and the matter remitted to the County Court of Dutchess County for a trial of the allegations of the petition.”
Following this decision the defendant Edwin Codarre, was brought before the Dutchess County Court, at Poughkeepsie, New York, and a hearing was held and proof was submitted by the appellant and by the People respondent covering the allegations of defendant’s petition.
Case History — It appears that the defendant, a 13-year-old boy, was indicted on August 26, 1943, charged with the crime of murder in the first degree in that he assaulted and killed a 20-year-old girl. Thereafter he pleaded not guilty and was assigned two defense counsel by the court. He proceeded to trial on November 15, 1943, and on November 23, 1943, after seven days of trial, he withdrew his plea of not guilty and entered a plea of guilty to murder in the second degree. On December 6, 1943, he was sentenced to State prison by the late Hon. J. Gordon Flannery, then County Judge, to an indeterminate term of 30 years to life. The mental condition of defendant was described to the court at a conference in chambers on November 22, 1943, prior to the acceptance of a plea. The minutes of the conference disclose that four psychiatrists examined defendant. Two were retained by the People and two were appointed by order of the court on defendant’s application pursuant to section 308 of the Code of Criminal Procedure. The mental condition of defendant was discussed by the four psychiatrists with the court in the presence of defense counsel but in the absence of defendant. Three psychiatrists agreed defendant was legally sane and one of those appointed for defendant claimed that he was suffering a form of epilepsy and not legally sane. No formal adjudication was had under section 658 of the Code of Criminal Procedure. Following the conference, the court accepted defendant’s plea to murder in the second degree with the approval of the District Attorney and defense attorneys.
*448 Testifying at the present hearing before the court were Edwin J. Codarre, defendant-appellant, his mother, Irene Bishop, Robert W. Laidlaw, M. D., and Ralph S. Banay, M. D., two of defendant-appellant’s original psychiatrists at his trial, and Milton M. Grover, M. D., one of the People’s original psychiatrists. It appears that Clarence O. Cheney, M. D., a psychiatrist for the People, is now deceased; but his question and answer report dated August 15, 1943, was admitted in evidence.
From the testimony presented, there seems to be no dispute that the defendant-appellant is presently suffering from epilepsy and has been suffering from this condition for many years while in prison. He is presently under medication by prescription for “ Dilantin ” which he is required to take four times a day. The question is whether Codarre was suffering epilepsy on the date of the commission of the crime for which he was charged and whether he was in an epileptic furor, episode or equivalent at the time of the commission of the crime.
Dr. Robert Laidlaw testified that he gave Edwin Codarre a neurological examination on October 19, 1943, at the Neurological Institute in New York. Later Dr. Laidlaw said that he saw Edwin Codarre in Dutchess County Court and was present at the conference held by the late County Judge Flannery, in chambers on November 22, 1943. At that time, he testified that Dr. Clarence O. Cheney and Dr. Milton M. Grover, two psychiatrists retained by the People, made available to him the examinations they had made of the defendant two days after his arrest. Following a discussion with these two doctors, Dr. Laidlaw stated that he agreed with them that the defendant Codarre knew the nature and quality of his act and that he knew the act was wrong. Dr. Laidlaw testified that he had read over the 1943 conference minutes and still agrees with his statement made at that time, which was: “ I would like to say I concur with Dr. Cheney and Dr. Grover in feeling the full retention of this crime in the boy’s memory, and his factual and logical explanation of the progressive steps, rules out the epileptic equivalent occurring at the time of the crime.”
Dr. Laidlaw further testified that clinical experience with epileptic equivalents shows that invariably acts committed during the period of such a change are characterized by very real clouding of consciousness, and at the cessation of this attack or episode, the patient has no memory of what occurred during the episode itself. (Note: from Codarre’s statement of the facts surrounding the crime, there appears to be no loss of memory.)
Dr. Laidlaw further testified that an electro-encephalogram report on Codarre which he examined, would not change his *449 opinion, and based on all the exhibits and his examination of the defendant his opinion remains the same as it was in 1943 (that Codarre knew the nature and quality of his act and that he knew the act was wrong).
Dr. Milton Grover testified that he and Dr. Cheney had examined Codarre (who was then 13 years of age) on August 15, 1943, two days after the commission of the crime. Later at a conference with the late Judge Flannery, Dr. Grover stated that it was his opinion that “ there was nothing even approaching epilepsy in connection with the commission of the crime.” He stated that there was a lack of amnesia and that the defendant recalled in detail how the crime was committed. Dr. Grover further stated that the fact that the defendant is now an epileptic and has suffered grand-mal and petit-mal seizures, would not change his opinion. He also stated that electro-encephalograms taken of Codarre, do not change his opinion and that he is still of the opinion “ that he both knew the nature and quality of the act and knew it was wrong.”
Dr. Clarence O. Cheney is now deceased, but at the conference before the late Judge Flannery, he agreed with Dr. Grover’s opinion, and stated, “ he told us a very connected, coherent story at that time and showed no evidence of mental disease or insanity or mental deficiency and showed no signs of epilepsy.”
The fourth psychiatrist who advised with the court in 1943, before the plea was accepted, was Dr. Ralph S. Banay. He testified that he had received Codarre’s family history from his mother, showing mental disease and alcoholism in the family. He stated that he was present at the conference in 1943 when Codarre was on trial in Dutchess County Court. He stated that in his opinion, the electro-encephalograms taken of Codarre were positive for epilepsy indicating brain damage which Codarre has had from early childhood to the present time.
Dr. Banay stated that Codarre is “ still experiencing petit-mal attacks and he is on medication and that he is still experiencing attacks despite the medication.”
Dr. Banay further stated that the electro-encephalograms taken in 1943 and 1949 are all consistent with the presence of epilepsy. At the conference with the late Judge Flannery in 1943, Dr. Banay stated, “ I would diagnose he was experiencing a psycho-motor epileptic attack at that time.” He stated that he based his opinion on his own findings, psychiatric examination, history of epilepsy and his knowledge of the subject. Dr. Banay stated that his opinion is still the same today.
*450 After hearing all the testimony, examining the exhibits, reading the memoranda of law submitted and after due deliberation thereon, the court decides as follows :
The defendant Edwin Codarre was tried and sentenced in 1943 which was five years prior to the enactment of section 486 of the Penal Law (1948) so this statute cannot be applied in favor of the offender. (See People v. Oliver, 1 N Y 2d 152,155, 163.) However, this court does agree with former Governor Dewey’s message approving the enactment of section 486, wherein he said that it was a shocking thought that so young a child could under our statutes be electrocuted for murder and it is well overdue to state in the law in no uncertain terms that a child under the age of 15 has no criminal responsibility irrespective of the act involved. (Public Papers of Governor Thomas E. Dewey, 1948, p. 225.)
It appears that there is no authority holding the prior law to be unconstitutional (see Clark and Marshall, Law of Crimes [5th ed.], § 78, p. 127, n. 351, for cases where children under the age of 13 were convicted of murder).
The court concludes that it has complied with the directions of the Court of Appeals and has proceeded with extreme caution in determining whether this defendant had a defense and whether sufficient consideration was given to it. It has reviewed the testimony submitted to the Trial Judge the late J. Gordon Flannery, and it appears that two of the psychiatrists are of the same opinion today as they were in 1943, that Edwin Codarre was legally sane when eommiting the offense. One psychiatrist still holds to his opinion of 1943 that the defendant was not legally sane by reason of epilepsy. The fourth psychiatrist, who is now dead, agreed with the majority opinion in his 1943 testimony.
The fact that defendant in 1943 remembered every step of the commission of the ¡offense as he recited it to the police authorities and later to psychiatrists, in the opinion of the court, rules out any defense of an epileptic furor, episode or equivalent. Even though, as it is claimed, the defendant was suffering epilepsy at the 'time of the offense, it would not in and of itself excuse him unless there had been a period of amnesia or lack of memory of the incidents involved. It is the conclusion of the court therefore, that Edwin 'Codarre was legally sane in 1943 when he committed the offense based on the only accepted definition of legal sanity, i.e,, he knew the nature and quality of the act and he knew the act was wrong. (Penal Law, § 1120.)
The only other question is the one of due process, did the procedure under which his plea of guilty was taken violate due *451 process? Petitioner was represented by competent counsel and they had available the adequate remedies of a motion in arrest of judgment and a motion to withdraw his plea (People v. Sadness, 300 N. Y. 69, supra) neither of which steps were taken.
However, since question of due process was directed to be reviewed by the Court of Appeals, it is the conclusion of this court after reviewing all the facts that the acceptance of a plea of guilty to murder in the second degree in this case did not violate the due process clause of the Fourteenth Amendment of the Constitution of the United States.
The court agrees that it was a distinct hardship on 13-year-old Edwin Codarre to be convicted of murder in 1943 when he could not have been so convicted after section 486 of the Penal Law was enacted in 1948. However, defendant was represented by two competent counsel with full knowledge of the facts at the time the plea of guilty was entered and the trial court accepted the plea after a full disclosure of all the evidence and after due consideration of the opinions of four psychiatrists as to defendant’s mental condition.
The court does not believe that it is the purpose of the writ of error coram nobis to question the judgment of defense attorneys in pleading defendant guilty or to question the judgment of the court in accepting the plea, unless errors not appearing on the face of the record should be corrected. There do not appear to be any such errors. Therefore, in the opinion of the court there was no denial of due process.
The defendant’s application therefore, should be denied in all respects.