**UNITED STATES of America ex rel. CODARRE, Petitioner-Appellant,**

v.

**GILLIGAN, Acting Warden of Green Haven Prison, Stormville, New York, Respondent-Appellee.**

**No. 318, Docket 30232.**

United States Court of Appeals
Second Circuit.

Argued April 6, 1966.

Decided June 28, 1966.

Clarie, District Judge, dissented.

O. John Rogge, New York City (Melvin L. Wulf, Legal Director of American Civil Liberties Union, New York City, of counsel), for appellant.

Iris A. Steel, Deputy Asst. Atty. Gen. of New York (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for appellee.

Before FRIENDLY and HAYS, Circuit Judges, and CLARIE, District Judge.*

* Of the District Court for Connecticut, sitting by designation.

HAYS, Circuit Judge:

On November 15, 1943 appellant Codarre, then thirteen years old, was placed on trial in the County Court of Dutchess County, New York, for the crime of murder in the first degree, a charge at that time carrying the possibility on conviction of imposition of the death penalty.[1] Codarre entered a plea of not guilty by reason of insanity. One Dr. Banay, a psychiatrist who had conducted a thorough examination of appellant, was prepared to testify that Codarre "was experiencing a psycho-motor epileptic attack * * * that this boy was legally insane at the time of the commission of the alleged crime."[2] There was also testimony to the contrary on the issue of legal insanity.

On November 23, 1943, after the state had rested its case, Codarre withdrew his plea of not guilty and entered a plea of guilty to murder in the second degree. He was sentenced to a term of imprisonment of thirty years to life.

On May 10, 1960, appellant applied to the County Court of Dutchess County, New York for a writ of error *coram nobis*. Lengthy litigation followed.[3] The New York Court of Appeals rendered two decisions. In the first, Chief Judge Desmond, speaking for the court, directed that a hearing be held because

"the taking of a guilty plea of murder from so young a defendant called for an extreme measure of caution and at least certainty of guilt and of the complete absence of any plausible defense. On a trial of the allegations of this petition, it might be found as fact that this defendant had such a defense and that insufficient consideration was given to it." People v. Codarre, 10 N.Y.2d 361, 365, 223 N.Y.S.2d 457, 459, 179 N.E.2d 475, 476–477 (1961).

At the hearing which followed, the county judge, focusing upon whether there was "certainty of guilt," merely decided that Codarre "was legally sane in 1943 when he committed the offense." People v. Codarre, 38 Misc.2d 445, 450, 237 N.Y.S.2d 389, 395 (Dutchess County Ct. 1963).

In the second Court of Appeals decision, the court said:

"The jury could have found the defendant guilty of murder in the first degree. It might have acquitted him on the ground of insanity had it ac-

---

1. The events which led to the original indictment, in which appellant was accused of the murder of a ten-year old girl, are set out in People v. Codarre, 20 A.D.2d 98, 245 N.Y.S.2d 81 (2d Dep't 1963).

2. At a *coram nobis* hearing held in 1962, Dr. Banay testified:
 "I based it [my conclusion] on my own finding, psychiatric examination, the history of the presence of epilepsy, and my knowledge that an epileptic person due to any excitement reacts with a furor or a paroxysmal state, and in that condition a person is incapacitated to use his judgment and evaluate the nature and the quality of the act. It could be a very short duration, a few seconds or longer, and does not have to be associated with loss of memory."
 The electroencephalogram (EEG) report of October 19, 1943, made for Dr. Banay by Dr. Hoefer indicated that:
 "Impression: *The record is markedly abnormal*. The response to hyperventilation and especially the synchronized bursts of high voltage slow activity *are indicative of convulsive dis-*
 *order*. The existence of spike-and-wave groups would point in the same direction. In addition the record shows suggestive focal signs over the right occipital area."
 An electroencephalogram report made on August 20, 1943, a week after the homicide, at the request of the district attorney, and a report made on July 7, 1949 contained similar conclusions.
 On the effect of an epileptic attack on criminal responsibility see People v. Higgins, 5 N.Y.2d 607, 186 N.Y.S.2d 623, 159 N.E.2d 179 (1959).

3. See People v. Codarre, 24 Misc.2d 902, 205 N.Y.S.2d 523 (Dutchess County Ct. 1960), aff'd, 13 A.D.2d 684, 215 N.Y.S.2d 731 (2d Dep't 1961), rev'd, 10 N.Y.2d 361, 223 N.Y.S.2d 457, 179 N.E.2d 475 (1961); People v. Codarre, 38 Misc.2d 445, 237 N.Y.S.2d 389 (Dutchess County Ct.), aff'd, 20 A.D.2d 98, 245 N.Y.S.2d 81 (2d Dep't 1963), aff'd, 14 N.Y.2d 370, 251 N.Y.S.2d 676, 200 N.E.2d 570, cert. denied, 379 U.S. 883, 85 S.Ct. 153, 13 L.Ed.2d 89 (1964).

cepted the opinion of the psychiatrist who thought he was insane. * * * [T]he Judge's decision to accept the plea was within a fair range of responsible judicial action." People v. Codarre, 14 N.Y.2d 370, 372, 251 N.Y.S.2d 676, 678, 200 N.E.2d 570, 571–572, cert. denied, 379 U.S. 883, 85 S.Ct. 153, 13 L.Ed.2d 89 (1964).

Chief Judge Desmond and Judge Fuld dissented.

Appellant then applied to the United States District Court for the Southern District of New York for a writ of habeas corpus. That court, finding no denial of due process, refused the writ.

 On this appeal we are not concerned with the substantive situation at the time the crime was committed, but rather with appellant's capacity at the time of the trial and of the plea of guilty. The issue with which we are faced is whether Codarre, then a thirteen year old boy with a history of epilepsy and evidence of brain abnormalities, made a reasoned choice, "voluntarily after proper advice and with full understanding of the consequences," when he entered his plea of guilty. Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927); see Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); United States ex rel. McGrath v. LaVallee, 348 F.2d 373, 376 (2d Cir. 1965). Where a guilty plea is not based upon a reasoned choice, the resulting conviction is open to collateral attack. See Machibroda v. United States, supra; Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 311 (2d Cir. 1963).

Appellant's counsel first indicated his desire to enter a plea of guilty at a conference held on the night of November 22, 1943. The trial judge, the district attorney, defense counsel and four psychiatrists were all present at the conference, but Codarre was not even informed that a conference would be held.

The next day, in accepting Codarre's plea, the trial judge said:

"[W]e were here until ten o'clock, *without your knowledge* * * * and it was after that lengthy discussion that *we* really came to that conclusion of this plea * * *." (Emphasis added.)

Of that conference Chief Judge Desmond said:

"The principal argument in favor of the guilty plea seemed to proceed from a fear expressed by the County Judge that defendant might be acquitted by the jury on the ground of insanity and be committed to a State mental hospital and might then be released shortly afterwards on a finding of sanity. There are signs that this apprehension may have diverted the attention of the conferees from their duty of providing a special measure of legal protection for this child." People v. Codarre, 10 N.Y.2d 361, 364, 223 N.Y.S.2d 457, 459, 179 N.E.2d 475, 476 (1961).

The memorandum of the conference illuminates the point made by Chief Judge Desmond:

"The Court: * * * Suppose they committed him to Matteawan, with very good treatment, he was released in a year, under the very capable care of Dr. MacNeill, he is a free man, isn't he?

Dr. Banay: He would be released if it is testified he has recovered.

The Court: Then he would be out at the age of 14 and with no provision for parole, and then we are in a hot spot."

If the judge had not been influenced by his fear that Codarre might be released from a mental hospital after a brief period, he might well have refused to accept the plea, for not only was there a chance of acquittal but the state's evidence was more suggestive of second degree than of first degree murder, and if the jury had convicted it would surely have been inclined to convict a thirteen-year old boy of the lesser rather than the greater charge. If all else went

wrong, it was almost a certainty, as everyone recognized,[4] that the Governor would exercise executive clemency and reduce a death sentence to life imprisonment. It is thus quite clear that Codarre gained no advantage from entering the guilty plea.

The transcript of the proceeding at which the plea was taken indicates that Codarre did not have a "full understanding" of what was being done:

"The Court: You have heard the suggestion from Mr. Dow [appellant's counsel] that your son be permitted to withdraw his plea of not guilty to murder in the first degree and plead guilty to murder in the second degree? You have heard that, have you?

Mrs. Bishop: Yes sir.

The Court: Do you acquiesce in that request?

Mrs. Bishop: I do *to this extent, that I am convinced beyond a doubt that he needs some medical attention.*

The Court: The question is, do you acquiesce in your son taking a plea to murder in the second degree?

Mrs. Bishop: If that saves him from the electric chair, that's agreeable." (Emphasis added.)

A similar question was then asked of Codarre himself. He responded "I will take the one that Mr. Dow said."

Since the record does not establish that in pleading guilty this thirteen-year old epileptic was exercising a reasoned choice, we find a denial of due process in New York's failure to provide adequate protective procedure.

The fact that Codarre had court-appointed counsel who recommended pleading guilty is not conclusive. Codarre himself must have made a reasoned choice. See Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (April 19, 1966); Kotz v. United States, 353 F. 2d 312, 314 (8th Cir. 1965); cf. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Whitus v. Balkcom, 333 F.2d 496, 502–503 (5th Cir.), cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L. Ed.2d 343 (1964). In Brookhart v. Janis, supra, 384 U.S. at 6, 86 S.Ct. at 1248, the Supreme Court held that the "constitutional rights of a defendant cannot be waived by his counsel" where "petitioner [himself] did not intelligently and knowingly agree to be tried in a proceeding which was the equivalent of a guilty plea."

We believe that New York had an affirmative duty to surround this thirteen-year-old boy charged with a capital offense with every reasonable protective measure, and particularly to provide a procedure that would assure that he would make a reasoned choice when confronted with the alternatives of pleading guilty to second degree murder or facing a possible death penalty. See Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The procedure provided offered insufficient protection.

In 1948 Governor Dewey, in approving a series of measures[5] which put an end to the classification of children under the age of fifteen as criminals, said:

"It is a shocking thought that under our criminal statutes a child of seven may be guilty of crime and conceivably could be electrocuted for the crime of murder. Of course, no enlightened community would permit such a situation to occur. The fact is, however, that within the very recent past children of 13 and 14 have been indicted for murder in the first degree and have pleaded guilty to homicide

---

4. At the time of the entry of the plea, the Court said:
 "I am also satisfied that we have a type of law in this Country and this State where the Governor has a right to exercise Executive Clemency, and I am sure that that Governor would have done just that in your case * * *."

5. See N.Y.Sess.Laws 1948, chs. 553–57, pp. 993–1000, N.Y.Code Crim.Proc. §§ 312–b to 312–h, N.Y.Pen.Law, McKinney's Consol.Laws, c. 40, § 486, subd. 3, N.Y. Children's Ct.Act, § 2, subd. 2, N.Y.C. Dom.Rel.Ct.Act § 2(15), N.Y.Soc. Welf. Law McKinney's Consol.Laws, c. 55, § 371, subd. 3(b).

in the lesser degrees in connection with killings for which they had been the causative agents. The time is well overdue to state in the law in no uncertain terms that a child under the age of fifteen has no criminal responsibility irrespective of the act involved. * * *

 * * * * * *

It is particularly gratifying to me that we in the State of New York are making this important advance in our laws, an advance which recognizes and proclaims the dignity of human beings, in a period in which it is frequently difficult to separate the institutions of barbarism from those of civilization."

Public Papers of Governor Thomas E. Dewey 225–26 (1948); New York State Legislative Annual 210–11 (1948); see People v. Oliver, 1 N.Y.2d 152, 162, 151 N.Y.S.2d 367, 375, 134 N.E.2d 197, 203 (1956). In the first opinion in People v. Codarre, 10 N.Y.2d 361, 365, 223 N.Y.S.2d 457, 459, 179 N.E.2d 475, 476–477 (1961), the Court of Appeals observed: "the taking of a guilty plea of murder from so young a defendant called for an extreme measure of caution."

In view of the situation with which the New York court was faced, the need for protective measures was particularly acute. In Gallegos v. Colorado, 370 U.S. 49, 54, 82 S.Ct. 1209, 1212, 8 L.Ed.2d 325 (1962), where a confession had been obtained from a fourteen-year old boy, the Supreme Court recognized the need of such a child for special protection:

"But a 14-year old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him when he is made accessible only to the police. That is to say, we deal with a person who is not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and who is *unable to know how to protect his own interests or how to get the benefits of his constitutional rights.*

The prosecution says that the *youth and immaturity of the petitioner and the five-day detention are irrelevant.*

* * * But if we took that position, it would, with all deference, be in callous disregard of this boy's constitutional rights. *He cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions."* (Emphasis added.)

See Haley v. Ohio, 332 U.S. 596, 599, 68 S.Ct. 302, 92 L.Ed. 224 (1948); Note, 50 Calif.L.Rev. 902, 904–05, 905 n. 15 (1962). See generally Clark & Marshall, Crimes § 6.12 (6th ed. 1958); Scott, Age and Development: Responsibility for Crime, 2 Medicine, Science and the Law 212 (1962); Note, Juvenile Delinquents: The Police, State Courts and Individualized Justice, 79 Harv.L.Rev. 775 (1966).

■ The entry of a plea of guilty demands even more stringent safeguards than are required for confessions. In Kercheval v. United States, supra at 223, 47 S.Ct. at 583 the Supreme Court admonished:

"A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, *courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences."* (Emphasis added.)

See Machibroda v. United States, supra.

In addition to Codarre's age his mental condition and family history required New York's authorities to see to it that a very high degree of care be exercised toward him. New York acknowledges that "encephalogram reports taken subsequent to the crime indicate appellant's epileptic condition." Dr. Banay testified at the *coram nobis* hearing that three electroencephalograms taken between 1943 and 1949 all show "brain damage." Codarre was the product of a broken home; he had been exposed to "real fa-

ther alcoholism" and "step-father alcoholism." The boy was raised largely in foster homes. His maternal grandparents were long-time hospital mental patients; the record indicates that his grandmother was a schizophrenic who had undergone thirty years of hospital treatment.

In view of the change in New York law which we have noted, Codarre cannot now be retried; the only way to deal with his situation is to release him.[6] He has already spent twenty-three years in prison.

In view of our disposition of the case, we need not pass upon the other points raised by appellant.

Reversed.

CLARIE, District Judge (dissenting):

I respectfully dissent.

This case is unique in that the Legislature of the State of New York has, since the defendant's conviction in 1943, amended[1] the Juvenile Delinquency Act in 1948 and 1949 so that a child under the age of 15 has no criminal responsibility, as such, irrespective of the act involved. Thus, under existing laws a 13-year-old could never again be presented for murder in the first degree for a homicide, for which he had been the causative agent. However, this law is not applicable to this defendant, because the New York Court of Appeals has ruled that this legislation "cannot be applied in favor of an offender tried and sentenced to imprisonment before its enactment." People v. Oliver, 1 N.Y.2d 152, 163, 151 N.Y.S.2d 367, 375, 134 N.E.2d 197, 203 (1956).

The matter comes before this Court on appeal from the United States District Court for the Southern District of New York denying the defendant's petition for a writ of habeas corpus without a hearing. The legal issues raised by the defendant and on which the Court based its decision were two, namely:

(1) A state procedure which permits an epileptic 13-year old to plead guilty to murder, especially when, according to the trial judge's own statement, the trial judge did not know whether the defendant was guilty or innocent, constituted a violation of the due process clause of the Fourteenth Amendment;

(2) The suppression by the prosecutor of a medical report, which showed the petitioner to be an epileptic constituted a violation of the due process clause of the Fourteenth Amendment.

The majority of this Court has selected as a basis for its decision a legal issue other than that raised by the petitioner and on which the District Court below made no factual findings. It appears to have selected as a basis for its conclusions, facts educed in the *coram nobis* hearing in the County Court of Dutchess County at Poughkeepsie, New York, as disclosed in that Court's opinion of February 8, 1963; 38 Misc.2d 445, 237 N.Y.S.2d 389 (1963). This latter hear-

---

6. In People v. Oliver, 1 N.Y.2d 152, 163, 151 N.Y.S.2d 367, 376, 134 N.E.2d 197, 204 (1956), the Court of Appeals held that a 1948 amendment to § 486 of the New York Penal Law, removing the acts of children under fifteen years of age from the category of crimes, should apply to the acts of a fourteen-year old boy who killed his infant brother in 1945, but was not brought to trial until 1954. The Court observed:

> "[W]hen the Legislature has seen fit to abolish the death penalty for a class of offenders, nothing but the very clearest legislative direction should lead us to conclude that it intended the prior law to apply in any subsequent trial."

and noted:

> "Amended section 486 applying, defendant may not be prosecuted for any crime, and it is exceedingly doubtful whether he may be proceeded against in the children's court, since he has passed the age of 21. See N.Y.City Dom.Rel.Ct. Act, § 61, subd. 1." Id. at 1 N.Y.2d at 163 n. 4, 151 N.Y.S.2d at 375 n. 4, 134 N.E.2d at 203 n. 4.

New York may, of course, pursuant to its Mental Hygiene Law, examine appellant and evaluate his mental condition before effectuating his release. See New York Mental Hygiene Law McKinney's Consol.Laws, c. 27, §§ 70–76, 78 (amended 1964).

1. N.Y.Laws 1948, Ch. 553–557.

ing had been ordered by the New York Court of Appeals on November 30, 1961, 10 N.Y.2d 361, 223 N.Y.S.2d 457, 179 N.E.2d 475 (1961), for the specific pur-· pose of determining whether the trial court, in accepting a plea of guilty of murder in the second degree from so young a defendant, had exercised "an extreme measure of caution and at least certainty of guilt and of the complete absence of any plausible defense."

The State Court County Judge after hearing all the evidence said:

"The Court concludes that it has complied with the directions of the Court of Appeals and has proceeded with extreme caution in determining whether this defendant had a defense and whether sufficient consideration was given to it. * * *

"It is the conclusion of the court therefore, that Edwin Codarre was legally sane in 1943 when he committed the offense based on the only accepted definition of legal sanity, i.e. 'He knew the nature and quality of the act and he knew the act was wrong.' (See 1120 Penal Law).

" * * * Petitioner was represented by competent counsel * * *.

" * * * (I)t is the conclusion of this Court after reviewing all the facts that the acceptance of a plea of guilty to murder in the second degree in this case did not violate the due process clause of the Fourteenth Amendment of the Constitution of the United States." 237 N.Y.S.2d at 394–395.

The foregoing decision was unanimously affirmed by the five members of the Appellate Division, of the Supreme Court of New York, Second Department on December 16, 1963, 20 A.D.2d 98, 245 N.Y.S.2d 81 (2d Dept. 1963). Their deci-

sion was affirmed by a 5–2 majority of the New York Court of Appeals on July 10, 1964, 14 N.Y.2d 370, 251 N.Y.S.2d 676, 200 N.E.2d 570 (1964); and certiorari was denied by the United States Supreme Court without dissent on October 17, 1964. 379 U.S. 883, 85 S.Ct. 153, 13 L.Ed.2d 89 (1964).

The same two issues passed upon by all of the foregoing tribunals, were considered by Judge Sugarman of the District Court and he decided, without a hearing, that the petitioner was not denied due process on the occasions of his trial for first degree murder and his ultimate plea of guilty to the lesser offense of second degree murder.

If, after 23 years, a majority of this Court is now disposed to consider that the circumstances surrounding the petitioner's plea of guilty made on the advice of two competent counsel were illegal, then orderly judicial procedure requires that the case be remanded to the District Court for a hearing and findings. Independent medical experts should be called by the Court itself, if necessary, to supplement the original record with advanced, current medical knowledge in this specialized field. This would aid in establishing a modern scientific factual basis for an objective evaluation of the conflicting medical opinions both at the trial [2] and the *coram nobis* hearings. For this Court to select excerpts from the minority medical opinion in the record and the quotations out of context of judicial discussions made in chambers prior to the acceptance of the lesser plea, as against the overall record of the case, does startling violence to orderly judicial procedure.

For this reason, I would remand the case to the District Court for a hearing on the merits.

2. Of the four physicians who examined Codarre, three expressed the opinion that his vivid recollection of every detail of the crime was totally inconsistent with his having suffered an epileptic seizure; one asserted that such recollection was not inconsistent with an epileptic attack and that he was experiencing a psychomotor epileptic attack at the time of the killing.