David S. BAKIC, Petitioner–Defendant,

v.

UNITED STATES of America,

No. 97–CV–538.

United States District Court,
N.D. New York.

July 23, 1997.

David S. Bakic, Ray Brook, NY, pro se.

U.S. Attorney, Binghamton, NY (Gary L. Sharpe, Asst. U.S. Attorney, of counsel), for Defendant.

## MEMORANDUM DECISION AND ORDER

McAVOY, Chief Judge.

Before the Court is Petitioner David S. Bakic's motion pursuant to 28 U.S.C. § 2255. Petitioner alleges: (1) he was denied due process when the District Court denied his request at sentencing for a competency hearing pursuant to 18 U.S.C. § 4241(a); (2) he was denied effective assistance of counsel; and, (3) that his conviction under 18 U.S.C.

§ 924(c)(1) can no longer be supported in light of the Supreme Court's recent decision in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). For the reasons set forth below, the Court finds each of these claims to be without merit.

## I. BACKGROUND

Petitioner David S. Bakic was convicted of using and carrying a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924(c). After pleading guilty on November 5, 1993, to a single count Information, Petitioner was sentenced on January 28, 1994, in the United States District Court in the Northern District of New York to a statutory required term of 10 years imprisonment. Petitioner waived his right to appeal his conviction and a direct appeal was never pursued.

In his written plea agreement, Petitioner admitted that he possessed twenty M–11, 9mm, semi-automatic short-barreled carbine rifles, which he attempted to exchange for one-half pound of cocaine and one half-pound of methamphetamine. (T. 3). The investigation of this offense began when FBI Agents, in an unrelated matter, arrested an individual who was later discovered to have traded a quantity of methamphetamine to Petitioner in exchange for an AK–47, semi-automatic rifle. (T. 3). Subsequent investigations revealed that Petitioner had a history of dealing drugs and large quantities of assault weapons. (T. 3).

In April 1993, the Bureau of Alcohol, Tobacco, and Firearms (ATF), enlisted the help of a confidential informant to arrange a guns-for-drugs exchange between the defendant and a fictitious drug dealer created by ATF Agents. (T. 4). ATF Agents state it was clear from the onset of their investigation Petitioner was interested in the use and sale of cocaine and methamphetamine along with the sale of illegal weapons. (T. 4). On April 12, 1993, the informant approached Petitioner and bought one M–11, 9mm semi-automatic rifle which Petitioner illegally provided with a short barrel. (T. 4). On July 22, 1993, Petitioner sold the informant another M–11, 9mm semi-automatic rifle, this time with an illegally cut down barrel. (T. 4). On

August 20, 1993, the guns-for-drugs exchange was planned; Petitioner agreed to trade twenty M–11 rifles with cut down barrels and obliterated serial numbers, two cases of ammunition, and $2,250 cash in exchange for one-half pound of methamphetamine and one-half pound of cocaine. (T. 5). Petitioner told the informant that he expected to sell the drugs he obtained from this deal. (T. 4). It was agreed that the informant would take the weapons and trade them for the drugs that were coming from a "New York" connection which in reality was the ATF Agents. (T. 5). On August 24, 1993, shortly after the informant left Petitioner's residence with the weapons, ATF Agents executed a federal search warrant on Petitioner and his property. (T. 5). Petitioner was taken into custody at that time. (T. 5).

Petitioner pled guilty to the offense of Possession of a Firearm in Relation to Drug Trafficking. 18 U.S.C. § 924(c)(1). According to 18 U.S.C. § 924(c)(1), whoever, during and in Relation to any crime of violence or drug trafficking crime, uses or carries a short-barrelled rifle, shall be sentenced to imprisonment for ten years. There is no other conviction in the present case. Therefore, according to statute, Petitioner was sentenced to ten years imprisonment. 18 U.S.C. § 924(c)(1).

While Petitioner has pled guilty to the offense, he accepts responsibility for his actions only to a point. While Petitioner admits that he sold the informant two illegally modified rifles, Petitioner disavows responsibility for the guns-for-drugs scheme and instead asserts that the government coerced him. (T. 6). However, the first time Petitioner raised his coercion claim was at his sentencing on January 28, 1994. (Sentencing Minutes, 6–8). Specifically, Petitioner who came into possession of several "hyperthyroid" articles, now speculates that his thyroid condition affected his mental state and caused him to negotiate the guns-for-drugs exchange. (Sentencing Minutes, 8–9). However, upon inquiry by this Court, Petitioner did not dispute his competency at the time he entered his plea of guilty to the § 924(c) charge on November 5, 1993. (Sentencing

Minutes, 8). Petitioner's counsel, Richard M. Schwartz, requested a mental competency hearing pursuant to 18 U.S.C. § 4241 at Petitioner's sentencing, but the District Court denied that request.

A direct appeal was never pursued, and on April 17, 1997, Petitioner proceeded *pro se* and filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. On June 12, 1997 Petitioner amended his § 2255 motion to include an additional claim. Petitioner presents a total of three arguments: (1) he was denied due process when the District Court denied his request at sentencing for a competency hearing pursuant to 18 U.S.C. § 4241(a); (2) he was denied effective assistance of counsel; and, (3) that his conviction under 18 U.S.C. § 924(c)(1) can no longer be supported in light of the Supreme Court's recent decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

## II. DISCUSSION

"Section 2255 of Title 28 U.S.C. provides that a prisoner in custody under sentence of a federal court may file a motion in the 'court which imposed the sentence to vacate, set aside or correct the sentence.'" *Hill v. United States,* 368 U.S. 424, 426, 82 S.Ct. 468, 470, 7 L.Ed.2d 417 (1962) (*quoting* 28 U.S.C. § 2255). The statute states four grounds upon which such relief may be granted: (1) that the sentence was imposed in violation of the Constitution or laws of the United States, (2) that the court was without jurisdiction to impose such sentence, (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence

is otherwise subject to collateral attack. 28 U.S.C. § 2255.

■■■ However, the Supreme Court has construed these four grounds for relief narrowly, following the general rule that a section 2255 collateral attack is not allowed to "do service for an appeal." *Adams v. United States ex rel. McCann,* 317 U.S. 269, 274, 63 S.Ct. 236, 239, 87 L.Ed. 268 (1942). Thus, failure to raise a particular claim on direct appeal will generally bar consideration of that claim in a section 2255 motion. *See United States v. Frady,* 456 U.S. 152, 167, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). In most instances, motions pursuant to section 2255 may be used as a first attempt to litigate an issue only if the issue involves a constitutional error, lack of jurisdiction in the sentencing court, or an error of law amounting to a complete miscarriage of justice. *Hardy v. United States,* 878 F.2d 94, 97 (2d Cir.1989). Additionally, constitutional or jurisdictional claim not raised on direct appeal can only be litigated pursuant to section 2255 as long as there has been no deliberate bypass. *See McCleskey v. Zant,* 499 U.S. 467, 509, 111 S.Ct. 1454, 1478, 113 L.Ed.2d 517 (1991) (describing deliberate bypass as "the deliberate abandonment of a claim the factual and legal basis of which are known to Petitioner"). All other types of claims that are not raised earlier are procedurally barred unless Petitioner can show cause for failing to raise the issue, and prejudice resulting therefrom. *See Frady,* 456 U.S. at 167–168, 102 S.Ct. at 1594–1595.

The limitation on section 2255 relief has special force with respect to convictions based on guilty pleas[1] that are made voluntarily pursuant to Rule 11 of the Federal Rules of Criminal Procedure.[2] Because a

---

1. In *United States v. Smith,* 440 F.2d 521 (7th Cir.1971), Judge Stevens emphasized the reasons for narrowly limiting the grounds for collateral attack on final judgments:

Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. *Smith,* 440 F.2d at 528–29 (Stevens, J., dissenting).

2. The great majority of all defendants against whom indictments or informations are filed in the federal courts plead guilty. *See* United States Attorneys Statistical Report, Fiscal Year 1964, p. 1. Therefore, the fairness and adequacy of the procedures for accepting guilty pleas are of vital importance in according equal justice to all. Rule 11(d) states:

The court shall not accept a plea of guilty or *nolo contendere* without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement.

guilty plea is itself a conviction, *see Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927), the Second Circuit has established that a voluntary plea of guilty forecloses a subsequent collateral attack on the judgment when the attack is based upon the alleged deprivation at some earlier stage in the proceeding. *See United States v. Lombardozzi,* 436 F.2d 878 (1971) (denying defendant's motion to withdraw guilty plea when plea was not involuntary in light of defendant's sophistication and intelligence); *United States v. Miller,* 254 F.2d 523 (1958) (denying defendant's motion to withdraw guilty plea of income tax evasion when plea was made voluntarily). *But see United States ex rel. Codarre v. Gilligan,* 363 F.2d 961 (1966) (granting defendant's motion to withdraw guilty plea of murder when plea was not based on reasoned choice). After evaluating Petitioner's first two claims alleging denial of due process and ineffective assistance of counsel in light of these foregoing principles, the Court finds both to be without merit.

## A. Petitioner's Denial of Due Process Claim

Petitioner asserts he was denied due process when the District Court denied his request at sentencing for a competency hearing pursuant to 18 U.S.C. § 4241(a). Section 4241(a) providers: at any time after the commencement of a prosecution for an offense and prior to the sentencing of a defendant, the defendant or the attorney for the government may file a motion for a hearing to determine the mental competency of the defendant. 18 U.S.C. § 4241 (emphasis added). Furthermore, the court shall order the hearing sua-sponte "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect ... rendering him ... unable to understand the nature and consequences of the proceedings against him." 18 U.S.C. § 4241(a). The requested mental competency hearing would, it is argued, have supported Petitioner's assertion that his thyroid condition affected his mental state and caused him to negotiate the guns-for-drugs exchange.

■ The Court concludes that there is absolutely no basis for vacating Petitioner's sentence on this basis. First, because this claim was not raised on direct appeal, it cannot be considered in a section 2255 motion unless the movant shows cause for failing to raise the issue, and prejudice resulting therefrom. *See Frady,* 456 U.S. at 167–168, 102 S.Ct. at 1594–1595. Petitioner, however, is precluded from showing cause and prejudice because Petitioner made a knowing and intelligent guilty plea pursuant to Rule 11 of the Federal Rules of Criminal Procedure. (Sentencing Minutes, 8). The Second Circuit has established that a voluntary plea of guilty precludes subsequent collateral attack on the judgment when the attack is based upon an alleged deprivation at some earlier stage in the proceeding. *See Lombardozzi,* 436 F.2d at 880.

■ Furthermore, while the plea minutes have not been transcribed, prior to accepting a plea from a defendant, this Court always inquires of a defendant as to whether the defendant has discussed possible defenses to a criminal charge, and inquiries the defendant that such defenses are waived upon a voluntary plea of guilty. Petitioner has apparently confused the purpose of a mental competency hearing under 18 U.S.C. § 4241 with a potential defense that could have been raised. Accordingly, Petitioner long ago waived any "insanity" defenses that could have been potentially raised at trial. Upon inquiry by this Court, Petitioner did not dispute his competency at the time he entered his plea of guilty to the 18 U.S.C. § 924(c) charge on November 5, 1993. (Sentencing Minutes, 8). Petitioner only disputes his mental competency *at the time of the commission of the crime,* (Sentencing Minutes, 8), this is a defense to the crime, not a challenge to the voluntariness of his plea. Therefore, this Court concludes that Petitioner made a voluntary plea of guilty, and thus rejects Petitioner's denial of due process claim.

## B. Petitioner's Ineffective Assistance of Counsel Claim

Petitioner claims that his sixth amendment right to effective assistance of counsel was

violated because Petitioner's counsel did not move for a hearing to determine defendant's mental competency. In order to establish his ineffective assistance claim, Petitioner must show: (1) that the attorney's representation was unreasonable under prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the results would have been different. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984); *see also United States v. Workman*, 110 F.3d 915 (2d Cir.1997). In applying this standard, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

■ In the present case, the record demonstrates that Petitioner brought the issue of his thyroid condition to the attention of his attorney after entering a guilty plea, and as sentencing was upon Petitioner. (Sentencing Minutes, 8–9). The attorney brought the matter to the attention of the Court, but was in no position to do anything more regarding the issue. (Sentencing Minutes, 8). In addition to being an unfair accusation as to the effective assistance of his counsel, Petitioner's argument is illogical under the circumstances and record before this Court. Therefore, this Court must reject Petitioner's ineffective assistance claim.

### C. Petitioner' Conviction Under 18 U.S.C. § 924(c)(1)

Petitioner's final claim is that his conviction under 18 U.S.C. § 924(c)(1) can no longer be supported in light of the Supreme Court's recent decision in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Section 924(c)(1) requires the imposition of specified penalties if the defendant, "during and in relations to any crime of violence or drug trafficking crime ... uses or carries a firearm." (emphasis added). Petitioner argues that "uses" signifies active employment of the firearm and that the barter of guns-for-drugs did not amount to a "use" which Petitioner could be convicted for under the statue. This Court disagrees and rejects Petitioner's final claim.

In support of his claim Petitioner relies on *Bailey v. United States*, where the Supreme Court narrowed the scope of "use" and ruled that " 'use' must connote more than mere possession of firearm by a person who commits a drug offense." —— U.S. at ——, 116 S.Ct. at 503. The *Bailey* Court declared that "section 924(c)(1)'s language instead indicates that Congress intended 'use' in the active sense of 'to avail oneself of.' " *Bailey*, —— U.S. at ——, 116 S.Ct at 503. In *Bailey* the Court held that the mere placement of a firearm for protection at or near the site of a drug crime or its proceeds or paraphernalia was not sufficient to support a conviction for "use" under the active-employment reading of that word. *Bailey*, —— U.S. at ——, 116 S.Ct at 503. Petitioner argues that according to the reasoning in *Bailey*, the bartering of guns for drugs will not suffice to support a conviction under the statute.

■ In *Smith v. United States*, the Supreme Court addressed the question of whether the barter of a gun for drugs constituted a "use" under section 924(c)(1), and concluded that it does. 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993). Although *Smith* was decided two years prior to *Bailey*, the Court's subsequent reasoning in *Bailey* does not contradict *Smith*. Indeed, the *Bailey* Court noted that its interpretation "[was] not inconsistent with *Smith*." *Bailey*, —— U.S. at ——, 116 S.Ct. at 508. The *Bailey* Court explained that although *Smith* declined to limit "use" to meaning "use as a weapon," the act of barter nonetheless adhered to an active-meaning interpretation of the term. In the present case, Petitioner's involvement in the guns-for-drugs barter scheme constituted "use" as defined under 18 U.S. C. § 924(c)(1). Consequently, Petitioner's conviction under the statute is supported by the facts, and this Court must reject Petitioner's final claim.

### III. CONCLUSION

After a review of the record as a whole, the Court does not find sufficient evidence to support Petitioner's claims. For the forego-

ing reasons, this Petition under 28 U.S.C. § 2255 is DENIED.

**IT IS SO ORDERED.**